Walter Mixon ALLEN, Jr. and
Mattie Gayle Allen

v.

PENNCO ENGINEERING CO., et al.

Civ. A. No. 91–562–B–2.

United States District Court,
M.D. Louisiana.

Feb. 28, 1994.

---

Charles R. Moore, Edward J. Walters, Jr.,
Moore, Walters & Shoenfelt, Baton Rouge,

LA, for Walter Mixon Allen, Jr., Mattie Gayle Allen.

H. Alston Johnson, III, Marshall M. Redmon, Phelps, Dunbar, Marks, Claverie & Sims, Baton Rouge, LA, for Pennsylvania Engineering Corp., Pennsylvania Engineering Co., Division of Pennco Engineering Co.

Alan Dean Weinberger, Middleberg, Riddle & Gianna, Barbara Lee Arras, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, LA, William H. Howard, III, H. Alston Johnson, III, Marshall M. Redmon, Phelps, Dunbar, Marks, Claverie & Sims, Baton Rouge, LA, for Pennco Engineering Co.

W. Arthur Abercrombie, Jr., James C. Carver, David Mark Bienvenu, Jr., Taylor, Porter, Brooks & Phillips, Baton Rouge, LA, for Balchem Corp.

John A. Bolles, Terriberry, Carroll & Yancey, New Orleans, LA, for Sun Refining and Marketing Co.

Dominic Joseph Gianna, Alan Dean Weinberger, David L. Bateman, William Matthew Blackston, Middleberg, Riddle & Gianna, New Orleans, LA, for Union Carbide Chemicals and Plastics Co., Inc.

Patrick Hannon Patrick, Richard C. Badeaux, Robert M. Contois, Jr., Jones, Walker, Waechter, Poitevent, Carrere and Denegre, New Orleans, LA, for Texaco, Inc.

Judith R.E. Atkinson, Thomas E. Balhoff, Mathews, Atkinson, Guglielmo, Marks & Day, Baton Rouge, LA, for American Sterilizers Co.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

POLOZOLA, District Judge.

## I. FACTS

Walter Mixon Allen, Jr. allegedly contracted brain cancer and nerve damage and an eye injury as a result of systematic exposure to a chemical known as ethylene oxide ("ETO") while working as a maintenance employee for the Baton Rouge General Medical Center ("the hospital"). ETO is the active ingredient in Penngas—a sterilizing agent utilized by the hospital to sterilize medical instruments.

The ETO allegedly used in the hospital in the form of Penngas was produced by three manufacturers: Sun Refining and Marketing Company ("Sun"), Union Carbide Chemicals and Plastics Company ("Union Carbide"), and Texaco, Inc. ("Texaco"). Upon production, these three manufacturers sold the ETO to Balchem Corporation ("Balchem") for distribution.

Balchem labeled and packaged the ETO pursuant to a license obtained from the Environmental Protection Agency ("EPA") as required by the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA")[1] and then sold the ETO to Pennco Engineering Company and/or Pennco Engineering Company, Inc. ("Pennco"). Pennco transformed the ETO into a separate material, a component part of "Penngas."[2] Before selling Penngas to the hospital, Pennco applied for and received its own EPA registration which governed the labeling of Penngas as required by FIFRA.

As the surviving spouse and only son of Walter Mixon Allen, Jr., Mattie Gayle Allen and Barry Lane Allen assert wrongful death and survival actions against the following defendants as the manufacturers and distributors of ETO: Sun, Union Carbide, Texaco, Balchem and Pennco.[3]

In their complaint, the plaintiffs claim the defendants are strictly liable because they failed to:

(1) adequately evaluate, research and test ETO for its carcinogenic potential, prior to and during manufacture, as well as subsequent to ETO leaving the control of the manufacturer;

(2) warn the purchaser and users about the carcinogenic potential of ETO;

---

1. 7 U.S.C.A. §§ 136–136y (West 1980 & Supp. 1993).

2. Penngas is a mixture of ETO (12%) and an inert ingredient dichlorodifluoromethane (88%).

3. The plaintiffs' complaint also names the American Sterilizers Company as a defendant, but this party is not involved in the pending motions for summary judgment.

(3) provide adequate information to the ultimate user of ETO, in the form of educational and/or instructive materials regarding the safe use of the product, safe exposure limits, medical monitoring, industrial hygiene and in general how to avoid the carcinogenic potential of the chemical;

(4) provide adequate information to government agencies, charged with the responsibility of protecting the health of workers, consumers and the general public, regarding the potential carcinogenicity of ETO in order that action could be taken to protect those exposed to ETO from harm;

(5) continuously conduct additional research and evaluate the adverse health effects of ETO;

(6) employ (directly or indirectly) adequate numbers of qualified scientific personnel to research and/or evaluate the carcinogenic potential of ETO prior to, during and subsequent to manufacture of the chemical;

(7) keep abreast of scientific knowledge, discoveries and advances;  and

(8) utilize the knowledge and skill of an expert and scientist in the field.

Additionally, the plaintiffs assert the defendants were negligent because of their failure to exercise reasonable care as a manufacturer of ETO.[4]

## II. FEDERAL PREEMPTION UNDER THE SUPREMACY CLAUSE

The defendants contend that most, if not all, of the plaintiffs' state law tort claims are preempted by FIFRA.

The Supremacy Clause of the United States Constitution provides the foundational authority for the doctrine of federal preemption. That clause states that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding."[5] It is axiomatic that state laws that interfere with, or are contrary to the laws of Congress are without effect.[6]

■■■ When determining whether there is federal preemption in areas traditionally controlled by the states, courts begin with the presumption that "the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress."[7] Consequently, in every preemption analysis, the ultimate touchstone is Congress' intent.[8]

■■■ Courts recognize three circumstances in which state law is preempted under the Supremacy Clause. A federal statute may contain a provision which states that it expressly supersedes state authority.[9] In the absence of such explicit language, state law may be displaced when Congressional regulation is so comprehensive that it is said to have completely occupied an entire field, leaving no room for state law.[10] Preemption may also occur when and to the "extent that state and federal law actually conflict."[11]

### FIFRA

Initially enacted by Congress in 1947, FIFRA served primarily as a licensing and

---

**4.** Although listed in its fifth amended complaint as a cause of action in strict liability, the Court will treat this claim as a negligence cause of action.

**5.** U.S. Const. art. VI, cl. 2.

**6.** *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, ——, 111 S.Ct. 2476, 2481, 115 L.Ed.2d 532 (1991) (quoting *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211, 6 L.Ed. 23 (1824) (Marshall, C.J.)).

**7.** *Cipollone v. Liggett Group, Inc.*, —— U.S. ——, ——, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (quoting *Rice v. Santa Fe Elevator Corp.*,

331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).

**8.** *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2617 (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1189, 55 L.Ed.2d 443 (1978)); *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1293 (5th Cir.1989).

**9.** *Mortier*, 501 U.S. at ——, 111 S.Ct. at 2481; *Stamps v. Collagen Corp.*, 984 F.2d 1416, 1420 (5th Cir.1993).

**10.** *English v. General Elec. Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990); *Stamps*, 984 F.2d at 1420.

**11.** *Mortier*, 501 U.S. at ——, 111 S.Ct. at 2482.

labeling statute until 1972.[12] When Congress completely revised the Act, it transformed FIFRA into a comprehensive regulatory statute governing the use, sale and labeling of pesticides.[13] Among other things, the amendments also transferred the responsibility for the Act's enforcement from the Department of Agriculture to the EPA.

Despite the extensive nature of FIFRA's regulatory scheme, neither its text nor the scope of its regulations indicate an intent by Congress to exclude all state pesticide regulation. To the contrary, FIFRA expressly protects the right of states to participate in the regulatory process. Congress delineated the degree to which states could regulate pesticides within FIFRA's comprehensive regulatory scheme in section 136v "authority of states"[14] which provides:

(a) In General

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.[15]

Thus, Congress protected the states existing authority to participate in pesticide regulation in paragraph (a), while establishing an important limit to that power through the language set forth in paragraph (b).

The Supreme Court's decision *Cipollone v. Liggett Group, Inc.*,[16] is helpful in determining the preemptive implications which flow from section 136v of FIFRA.

In *Cipollone*, a plurality held that certain failure to warn and fraudulent misrepresentation claims made by a lung cancer victim against a cigarette manufacturer were preempted by the Public Health Cigarette Smoking Act of 1969 ("Smoking Act").[17] In doing so, the Court relied exclusively upon the express language found in section 5(b) of the Act, which reads:

No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.[18]

In analyzing the Smoking Act's preemptive provision, the Supreme Court reasoned that

[w]hen Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a "reliable indicium of congressional intent with respect to state authority," "there is no need to infer congressional intent to pre-empt state laws from the substantive provisions" of the legislation.... [W]e need only identify the domain expressly pre-empted by [the statute].[19]

FIFRA contains a provision similar to the Smoking Act which expressly addresses pre-emption and provides a reliable indicium of state authority.[20] Thus, the question before the Court is not whether there is preemption, but which claims fall within the preemptive reach of the preemption provision. Accordingly, this Court need only identify the issues expressly preempted by Congress through section 136v(b) in order to determine whether any of the plaintiffs' claims are displaced.[21]

**12.** *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 991, 104 S.Ct. 2862, 2866, 81 L.Ed.2d 815 (1984).

**13.** *Mortier*, 501 U.S. at ——, 111 S.Ct. at 2479.

**14.** *Mortier*, 501 U.S. at ——, 111 S.Ct. at 2486.

**15.** 7 U.S.C. § 136v(a) (West Supp.1993).

**16.** —— U.S. at ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).

**17.** *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2625.

**18.** Pub.L. 91–222, 84 Stat. 87, as amended, 15 U.S.C. §§ 1331–1340.

**19.** *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2618 (citations omitted).

**20.** *Papas v. Upjohn Co.*, 985 F.2d 516, 517 (11th Cir.1993).

**21.** The Court rejects, at the outset, "field occupation" or "conflict" preemption analysis because Congress has included an express preemption provision. See *Stamps v. Collagen Corp.*, 984 F.2d 1416, 1420 (5th Cir.1993).

■ Although the words employed in the Smoking Act's preemptive provision are different from those used in section 136v(b), their effect is the same. The *Cipollone* Court, found that "common law damages actions of the sort raised by [the *Cipollone* plaintiffs] are premised on the existence of a legal duty," and determined that the term "requirements" "sweeps broadly and suggests no distinction between positive enactments and common law." [22] This Court finds that the term "requirements," as used in FIFRA's preemptive provision, includes state law damages actions.

■ Thus, applying *Cipollone*, the Court must determine "whether the legal duty that is the predicate of the common law damages action" constitutes a requirement for labeling or packaging which is either "in addition to" or "different from" those required by FIFRA.[23] In other words, a claim asserted by plaintiffs under state law causes of action will be preempted if it (1) constitutes a requirement in addition to or different from any requirement the EPA establishes *and* (2) relates to labeling or packaging of pesticides.[24]

Not all common law damage actions are preempted under the *Cipollone* analysis. In fact, the *Cipollone* Court specifically determined that the Smoking Act did not preempt the plaintiff's claims that relied solely on the defendants' testing or research practices or other actions unrelated to advertising

or promotion.[25] Furthermore, section 136v(b) must be construed in light of the presumption against preemption.[26]

## III. SUMMARY JUDGMENT

■ Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [27] If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.[28] In opposing the granting of summary judgment, the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings, but by its own affidavits, depositions, answers to interrogatories, or admissions the non-moving party must set forth specific facts showing that there is a genuine issue for trial.[29] When all the evidence presented by both parties could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.[30]

■ Where the non-moving party bears the burden of proof at trial, the moving party may discharge its burden by showing or pointing out to the court that there is an absence of evidence to support the non-mov-

22. *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2620. In reference to the absence of the phrase "or prohibitions" from the preemption clause of section 136v(b), the Fifth Circuit has held in a similar context that "[i]t would be anomalous to interpret the MDA differently from the Public Health Cigarette Smoking Act solely on the basis that while they both employ 'requirement,' the MDA omits 'prohibition.'" *Stamps*, 984 F.2d 1416, 1421 (5th Cir.1993).

23. *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2621; *Stamps*, 984 F.2d at 1422.

24. *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2621; *Stamps*, 984 F.2d at 1421.

25. *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2622. See also *Moore v. Kimberly–Clark Co.*, 867 F.2d 243, 247 (5th Cir.1989).

26. *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2621.

27. Fed.R.Civ.P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cormier v. Pennzoil*, 969 F.2d 1559 (5th Cir.1992); *Fontenot v. Upjohn Co.*, 780 F.2d 1190 (5th Cir.1986).

28. *Cormier*, 969 F.2d at 1560.

29. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir.1991); *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990).

30. *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *Cormier*, 969 F.2d at 1560.

ing party's case.[31] The moving party is not required to produce evidence to negate the non-moving party's claims.[32] The non-moving party must then come forward with evidence which establishes each element for which that party bears the burden of proof at trial. Otherwise, no genuine issue as to any material fact exists, since a complete failure of proof concerning one element of the non-moving party's case necessarily renders all other facts immaterial, and the moving party is entitled to summary judgment.[33]

## IV. RULINGS

Having considered the entire record and the oral argument of counsel, the Court makes the following rulings:

Summary judgment as to allegation (1) is denied without prejudice. The Court reserves to all parties the right to re-urge summary judgment on this cause of action now in a posture where all of the briefs and evidence will pertain solely to this one issue or after further discovery has been conducted. Because the plaintiffs concede that allegations (5), (6), (7) and (8) are subsumed under allegation (1), the Court will not address these allegations separately, but include them collectively as allegation (1).[34]

■ Summary judgment as to allegations (2), (3) and (4) is granted because the Court determines that these claims are expressly preempted under FIFRA for the reasons set forth above and for reasons more fully set forth in *Worm v. American Cyanamid Co.,*[35] *King v. E.I. Dupont De Nemours and Co.,*[36] *Shaw v. Dow Brands, Inc.,*[37] *Papas v. Upjohn Co.,*[38] and *Arkansas–Platte & Gulf v. Van Waters & Rogers.*[39]

Summary judgment as to allegation (4) is granted because the plaintiffs admit that there is no evidence in the record supporting the contentions set forth in that cause of action.[40]

Summary judgment as to allegation (9) is granted because the plaintiff has failed to set forth specific facts showing that there is a genuine issue for trial on this claim.

Each party who wishes to file a motion for summary judgment as to allegation (1) must set forth, individually, the grounds for which it asserts summary judgment should be granted and specifically designate the evidence supporting its contentions. Also, the Court will not allow the parties to adopt arguments set forth in memoranda filed by any other party.

Therefore:

**IT IS ORDERED** that the defendants' motions for summary judgment as to allegation (1) be and they are hereby **DENIED** without prejudice to the right of any party to re-urge said motion now or after further discovery.

**IT IS FURTHER ORDERED** that the defendants' motions for summary judgment as to allegation (2), (3), (4) and (9) of the complaint be and they are hereby **GRANTED** as to each of these claims.

31. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554; *Lavespere,* 910 F.2d at 178; *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.,* 868 F.2d 740, 747 (5th Cir.1989); *Slaughter v. Allstate Ins. Co.,* 803 F.2d 857, 860 (5th Cir.1986).

32. *Latimer v. Smithkline & French Laboratories, Div. of Smithkline Beckman Corp.,* 919 F.2d 301, 303 (5th Cir.1990); *Lavespere,* 910 F.2d at 178; *Teply v. Mobil Oil Corp.,* 859 F.2d 375, 379 (5th Cir.1988).

33. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552; *Dunn v. State Farm Fire & Cas. Co.,* 927 F.2d 869, 872 (5th Cir.1991).

34. See Pls.Mem.Opp.Summ.J. at 12 (August 16, 1993).

35. 5 F.3d 744 (4th Cir.1993).

36. 996 F.2d 1346 (1st Cir.1993).

37. 994 F.2d 364 (7th Cir.1993).

38. 985 F.2d 516 (11th Cir.1993). In *Papas,* the court rejected a claim which, in similar fashion to allegation (3), asserted that point-of-sale signs, consumer notices, or other informational materials unrelated to labeling and packaging were not preempted by FIFRA, and also rejected an "omission theory" similar to that asserted in allegation (4).

39. 981 F.2d 1177 (10th Cir.1993).

40. See Pls.Mem.Opp. to Summ.J. at 12 (August 16, 1993).