[No. A063939. First Dist., Div. Three. Feb. 21, 1995.]

LOUISIANA-PACIFIC CORPORATION, Plaintiff and Appellant, v. KOPPERS COMPANY, INC., Defendant and Respondent.

COUNSEL

Rawles, Hinkle, Carter, Behnke & Oglesby, Jared G. Carter and Michael D. Macomber for Plaintiff and Appellant.

Hefner, Stark & Marois, Todd A. Murray, Jeffrey H. Graybill, Wildman, Harrold, Allen & Dixon, Robert L. Shuftan and Anthony G. Hopp for Defendant and Respondent.

OPINION

**CORRIGAN, J.—**

### INTRODUCTION

In this case we must decide whether plaintiff Louisiana-Pacific Corporation's (L/P) tort action against defendant Koppers Company, Inc. (Koppers) is preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA).[1] We conclude the action is preempted and, hence, that the trial court correctly granted Koppers's motion for summary judgment.

### BACKGROUND

L/P operated a lumber mill and wood treating facility in Potter Valley, Mendocino County. Beginning around 1973, L/P purchased from Koppers a wood preservative called Noxtane, which contains pentachlorophenol. Noxtane was registered with, and its label regulated by, the United States Department of Agriculture (USDA) and, later, the United States Environmental Protection Agency (EPA). The 55-gallon barrels of Noxtane that L/P purchased from Koppers bore USDA- or EPA-approved warning labels.

Between the mid-1970's and mid-1980's, L/P learned that state and federal regulatory agencies were concerned about potential soil and groundwater contamination from the use of pentachlorophenol chemicals, including Noxtane. In 1987, the California Regional Water Quality Control Board issued an order requiring L/P to abate further Noxtane discharges and submit a proposal for cleaning up contaminated soil, surface and groundwater.

L/P filed suit against Koppers seeking damages for the cost of investigating and remediating the Noxtane contamination. The complaint stated causes

---

[1] 7 United States Code section 136 et seq.

of action for strict product liability, indemnity, and partial indemnity. Each claim was premised on allegations that Koppers had failed adequately to warn L/P about the safe application, use, and disposal of Noxtane.

Koppers moved for summary judgment, arguing: (1) L/P's claims were time barred; (2) L/P could not establish factual elements essential to its claims; and (3) L/P's claims were preempted by FIFRA. The trial court granted summary judgment on the sole basis of FIFRA preemption, declining to reach Koppers's other arguments. L/P timely appealed the ensuing judgment.

DISCUSSION

In *Cipollone* v. *Liggett Group, Inc.* (1992) 505 U.S. 504 [120 L.Ed.2d 407, 425-428,112 S.Ct. 2608, 2619-2622] (hereafter *Cipollone*), the United States Supreme Court held the Public Health Cigarette Smoking Act of 1969 expressly preempts common law actions based on a manufacturer's failure to warn of smoking hazards. We conclude FIFRA's preemptive language compels a like result here.

### I. *Summary Judgment*

Summary judgment is proper only if the suit presents no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c.) Because the trial court's ruling on a motion for summary judgment is one of law based upon the papers submitted, we independently determine whether the evidence submitted raises a triable issue of material fact. (*Schrader* v. *Scott* (1992) 8 Cal.App.4th 1679, 1683 [11 Cal.Rptr.2d 433]; *Wilkerson* v. *Wells Fargo Bank* (1989) 212 Cal.App.3d 1217, 1224-1225 [261 Cal.Rptr. 185].) Here, as there is no dispute over the facts supporting the grant of summary judgment, FIFRA preemption presents a purely legal question. (See *Schrader* v. *Scott, supra,* at p. 1684.)

### II. *Federal Preemption*

■ Federal preemption doctrine stems from the constitutional provision that the laws of the United States are the supreme law of the land, "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." (U.S. Const., art. VI, cl. 2.) In *Cipollone*, the United States Supreme Court stated: "Consideration of issues arising under the Supremacy Clause start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress. . . . Accordingly, [t]he purpose of Congress is the ultimate touchstone of pre-emption analysis. . . .

"Congress' intent may be explicitly stated in the statute's language or implicitly contained in its structure and purpose. . . . In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, . . . or if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." (*Cipollone, supra,* 505 U.S. at p. __ [120 L.Ed.2d at pp. 422-423, 112 S.Ct. at p. 2617], citations and internal quotations omitted, brackets in original, fifth ellipsis added.) The *Cipollone* plurality noted, however, that when a federal statute contains an express preemption clause providing a " 'reliable indicium of congressional intent with respect to state authority,' " courts are not free to consider theories of implied preemption. (505 U.S. at p. __ [120 L.Ed.2d at p. 423, 112 S.Ct. at p. 2618].) Instead, a court called upon to interpret an express preemption provision "need only identify the domain expressly pre-empted . . . ." (*Ibid.*)

## III. *FIFRA (7 U.S.C. § 136 et seq.)*

In evaluating the preemption question, a brief overview of the legislation in this area is instructive. Congress enacted FIFRA in 1947 to replace and expand the Insecticide Act of 1910, the federal government's first effort to regulate pesticides. (See *Wisconsin Public Intervenor* v. *Mortier* (1991) 501 U.S. 597, 601 [115 L.Ed.2d 532, 540, 111 S.Ct. 2476].) Like its predecessor, the 1947 act was "primarily a licensing and labeling statute." (*Ruckelshaus* v. *Monsanto Co.* (1984) 467 U.S. 986, 991 [81 L.Ed.2d 815, 825, 104 S.Ct. 2862].) In 1972, Congress significantly strengthened FIFRA's registration and labeling standards and transformed it into a comprehensive regulatory statute governing the use and sale of pesticides. (*Id.* at pp. 991-992 [81 L.Ed.2d at pp. 825-826].)

FIFRA mandates that all pesticides sold in this country be registered by the EPA. (7 U.S.C. § 136a(a).) The EPA will not register any pesticide unless it determines, inter alia, that the labels submitted by the manufacturer are adequate to protect the public from fraud and personal injury and to prevent unreasonable adverse effects on the environment. (40 C.F.R. § 156.10(*i*)(1)(i) (1992); see 7 U.S.C. § 136a(c)(5)(B), (C), (D).)[2] Detailed regulations enacted pursuant to FIFRA specify not only particular information and warning language that must be included on the label, but also

---

[2]The statute defines "label" to mean "the written, printed, or graphic matter on, or attached to, the pesticide or device or any of its containers or wrappers." (7 U.S.C. § 136(p)(1).) "Labeling" is broadly defined as "all labels and all other written, printed, or graphic matter—[¶] (A) accompanying the pesticide or device at any time; or [¶] (B) to which reference is made on the label or in literature accompanying the pesticide or device, except to

the type size, color, and placement of the warning on the label. (40 C.F.R. §§ 156.10(a)(1)-(a)(2), (h)(1)-(h)(2), (*i*) (1992).) The regulations also suggest "typical precautionary statements" that the manufacturer must modify or expand as necessary to reflect specific hazards. (40 C.F.R. § 156.10(h)(2)(i)(B) (1992).) Once the EPA approves a label, the manufacturer may not change it without the agency's approval. (*Worm* v. *American Cyanamid Co.* (4th Cir. 1993) 5 F.3d 744, 747.)

### IV. Construed in Light of Cipollone, FIFRA's Preemption Clause Encompasses Common Law Claims

■ FIFRA (7 U.S.C. § 136 et seq.) expressly addresses the extent to which states may regulate pesticides. Section 136v(a) provides: "A State may regulate the *sale or use* of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter." (Italics added.) Section 136v(b), however, titled "Uniformity," specifies that: "Such State shall not impose or continue in effect any requirements for *labeling or packaging* in addition to or different from those required under this subchapter." (Italics added.) It is undisputed that section 136v(b) thus precludes state rulemaking bodies from imposing labeling or packaging requirements. The question we face, rather, is whether the section demonstrates a further congressional intent to preempt common law actions based on theories of failure to warn. No California case directly addresses this issue.[3] We now join with the vast majority of courts in holding that the principle in *Cipollone* dictates a finding of preemption.

In *Cipollone, supra,* 505 U.S. 504, the United States Supreme Court compared the preemptive effect of the 1965 Federal Cigarette Labeling and Advertising Act[4] and its successor, the Public Health Cigarette Smoking Act of 1969[5] (hereafter 1969 cigarette act). Differing language in each act compelled divergent findings on the preemption issue. Section 5 of the 1965 act[6] stated in relevant part: " '(a) *No statement* relating to smoking and health, other than the [federally mandated warning], *shall be required* on any cigarette package. [¶] (b) No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.' " (505 U.S. at p. __ [120 L.Ed.2d at p. 421, 112 S.Ct. at p. 2616], italics added.) Construing this

---

current official publications of [specified government agencies and institutions]." (7 U.S.C. § 136(p)(2).)

[3]On June 21, 1994, the Supreme Court granted review of the one published opinion to reach the question of FIFRA preemption. (*Macias* v. *State of California*\* (Cal.App.).)

[4]15 United States Code section 1331 et seq. (1965).

[5]15 United States Code section 1331 et seq. (1969).

[6]Codified as 15 United States Code section 1334 (1965).

---

\*Reporter's Note: For Supreme Court opinion see *Macias* v. *State of California* (1995) 10 Cal.4th 844.

language in light of the presumption against federal preemption, the high court found no evidence of a congressional intent to preempt state law tort actions. (*Id.* at p. __ [120 L.Ed.2d at p. 424, 112 S.Ct. at pp. 2618-2619].) Noting the lack of any "inherent conflict between federal pre-emption of state warning requirements and the continued vitality of state common law damages actions," the court concluded section 5 of the 1965 act only precluded state rulemaking bodies from mandating particular warning labels. (505 U.S. at p. __ [120 L.Ed.2d at p. 424, 112 S.Ct. 2618-2619].)

Not so, however, with respect to the 1969 cigarette act. Section 5(b) of that act[7] states: " '*No requirement or prohibition* based on smoking and health *shall be imposed* under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.' " (*Cipollone, supra,* 505 U.S. at p. __ [120 L.Ed.2d at p. 422, 112 S.Ct. at p. 2617], italics added.) The high court held this language, in contrast to the earlier statute, *does* preempt common law claims. "The phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules. As we noted in another context, '[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.' [Citation.]" (505 U.S. at p. __ [120 L.Ed.2d at p. 426, 112 S.Ct. at p. 2620].) The court concluded the plaintiffs' failure-to-warn claims were preempted to the extent they required a showing that the defendants' advertising or promotions should have included additional or clearer warnings. (505 U.S. at p. __ [120 L.Ed.2d at pp. 427-428, 112 S.Ct. at pp. 2621-2622].)[8]

We discern no significant distinction between FIFRA's prohibition of state-imposed labeling and packaging "requirements" and the 1969 cigarette

---

[7]Codified as 15 United States Code section 1334(b) (1969).

[8]Justice Stevens's lead opinion in *Cipollone* garnered the votes of only four justices. Justice Blackmun, joined by Justices Kennedy and Souter, concurred in part but disagreed with the plurality's finding that the 1969 cigarette act preempted state common law damages claims. (505 U.S. at p. __ [120 L.Ed.2d at pp. 432-440, 112 S.Ct. at pp. 2625-2632].) Justice Scalia, joined by Justice Thomas, agreed with the plurality that section 5(b) of the 1969 cigarette act encompasses common law claims, but would have found preemption of all, rather than some, of the claims presented there. (*Id.* __ [120 L.Ed.2d at pp. 440-448, 112 S.Ct. at pp. 2632-2638].) As the plurality's holding that the 1969 cigarette act preempted the plaintiffs' failure-to-warn claims thus commanded six votes, it can fairly be said to constitute the view of the court on the issue. (*MacDonald* v. *Monsanto Co.* (5th Cir. 1994) 27 F.3d 1021, 1024, fn. 1; *King* v. *E.I. DuPont de Nemours and Co.* (1st Cir. 1993) 996 F.2d 1346, 1349; see *Mangini* v. *R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1066, fn. 1 [31 Cal.Rptr.2d 358, 875 P.2d 73].)

act's "requirement or prohibition" language. As one federal court has put it, "Both [acts] seem equally emphatic: '[n]o requirements or prohibitions' is just another way of saying a '[s]tate shall not impose . . . any requirements.' Not even the most dedicated hair-splitter could distinguish these statements." (*Shaw* v. *Dow Brands, Inc.* (7th Cir. 1993) 994 F.2d 364, 371, brackets and ellipsis in original.) The First Circuit has similarly noted: "The FIFRA language prohibiting the states from 'impos[ing] or continu[ing] in effect any requirements,' 7 U.S.C. § 136v(b), is virtually indistinguishable from the state-imposed 'requirement' language that *Cipollone* held preempted the state common law tort claims based on inadequate warning." (*King* v. *E.I. DuPont de Nemours and Co.*, *supra*, 996 F.2d at p. 1349, brackets in original.) We agree. Just as the 1969 cigarette act expressly preempted the tobacco litigants' state law tort claims, FIFRA preempts L/P's failure-to-warn claims based on inadequate labels or packaging.[9]

We are far from alone in reaching this conclusion. Since *Cipollone*, the overwhelming majority of courts that have considered this issue, including every federal circuit court to have confronted it, has concluded 7 United States Code section 136v(b) expressly preempts common law failure-to-warn claims. (See *Bingham* v. *Terminix Intern. Co., L.P.* (S.D.Miss. 1994) 850 F.Supp. 516, 519-520 & fn. 6, citing numerous cases.)[10] Indeed, the United States Supreme Court itself has indicated *Cipollone* governs FIFRA preemption analysis. In *Arkansas-Platte & Gulf* v. *Van Waters & Rogers* (10th Cir. 1992) 959 F.2d 158, 164 (*Arkansas-Platte I*) and *Papas* v. *Upjohn Co.* (11th Cir. 1991) 926 F.2d 1019, 1024 (*Papas I*), the Tenth and Eleventh Circuits held 7 United States Code section 136v(b) *impliedly* preempted state common law warning claims. The Supreme Court vacated both judgments and remanded the cases for consideration in light of *Cipollone*. (See *King* v. *E.I. DuPont de Nemours and Co.*, *supra*, 996 F.2d at p. 1350.) On remand, both

---

[9]L/P asserts FIFRA is more limited than the 1969 cigarette act in that the latter extends to requirements and prohibitions concerning "advertising or promotion," as well as to labeling or packaging. L/P has never suggested, however, that its claims were predicated on anything beyond alleged inadequacies in the Noxtane's labeling and packaging. For purposes of this action, we ascribe no significance to L/P's proposed distinction.

[10]See, e.g., *MacDonald* v. *Monsanto Co.*, *supra*, 27 F.3d 1021; *Worm* v. *American Cyanamid Co.*, *supra*, 5 F.3d 744; *King* v. *E.I. DuPont de Nemours and Co.*, *supra*, 996 F.2d 1346; *Shaw* v. *Dow Brands, Inc.*, *supra*, 994 F.2d 364; *Papas* v. *Upjohn Co.* (11th Cir. 1993) 985 F.2d 516 (*Papas II*); *Arkansas-Platte & Gulf* v. *Van Waters & Rogers* (10th Cir. 1993) 981 F.2d 1177 (*Arkansas-Platte II*); *Allen* v. *Pennco Engineering Co.* (M.D.La. 1994) 847 F.Supp. 1315; *Wright* v. *Dow Chemical U.S.A.* (M.D.Tenn. 1993) 845 F.Supp. 503; *Trinity Mountain Seed Co.* v. *MSD Agvet* (D.Idaho 1994) 844 F.Supp. 597; *DerGazarian* v. *Dow Chemical Co.* (W.D.Ark. 1993) 836 F.Supp. 1429; *Levesque* v. *Miles Inc.* (D.N.H. 1993) 816 F.Supp. 61; see also *Stamps* v. *Collagen Corp.* (5th Cir. 1993) 984 F.2d 1416, 1420-1421 [under *Cipollone*, similar provision in federal medical devices law prohibiting any state-imposed safety "requirement" preempts common law claims].)

circuit courts concluded FIFRA *expressly* preempted state tort claims predicated on theories of inadequate labeling or packaging. (*Ibid.*) "Thus," the Eleventh Circuit noted, "the *Cipollone* opinion dictates, under an express pre-emption analysis, the same result we reached earlier under the implied preemption doctrine." (*Papas II, supra,* 985 F.2d at p. 518.)

L/P argues *Cipollone* does not govern because, unlike the cigarette acts, section 136v(a) of FIFRA explicitly authorizes each state to regulate the sale or use of registered pesticides within its borders. (See *Wisconsin Public Intervenor* v. *Mortier, supra,* 501 U.S. 597; *People* ex rel. *Deukmejian* v. *County of Mendocino* (1984) 36 Cal.3d 476, 488-493 [204 Cal.Rptr. 897, 683 P.2d 1150] [regarding state and local authority to regulate pesticide use under 7 U.S.C. § 136v(a)].) At issue here, however, is section 136v(b). That provision makes it clear that the regulatory authority reserved to the states in section 136v(a) does not extend to labeling and packaging. While at least one court has observed that section 136v(a) signals a need for particular caution in construing section 136v(b) (*Burke* v. *Dow Chemical Co.* (E.D.N.Y. 1992) 797 F.Supp. 1128, 1140), it does not mean we may ignore *Cipollone*'s analysis of nearly identical language.

L/P further argues the post-*Cipollone* courts that have found FIFRA preemption have failed to recognize a critical distinction between FIFRA and the 1969 cigarette act. The statute *Cipollone* addressed mandates specific warnings that cannot be altered.[11] (*Cipollone, supra,* 505 U.S. at p. __ [120 L.Ed.2d at p. 417, 112 S.Ct. at p. 2613].) FIFRA, on the other hand, permits pesticide makers to submit their own wording for proposed labels which are then subject to EPA approval. (7 U.S.C. §§ 136a(c)(1)(C), 136a(c)(3); 40 C.F.R. §§ 152.50(e) (1993), 152.112 (1988).) As FIFRA does not require *identical* labeling of identical products, L/P argues, jury findings that EPA-approved labels are inadequate would not threaten any federal policy of uniform labeling.

The point is meritless. L/P's argument is addressed, it would seem, to an implied preemption theory: that state common law actions are not preempted by FIFRA because they do not necessarily conflict with it or threaten to interfere in the legislative field it occupies. (See *Cipollone, supra,* 505 U.S. at p. __ [120 L.Ed.2d at pp. 422-423, 112 S.Ct. at p. 2617].) *Cipollone,* however, teaches that the language of 7 United States Code section 136v(b)

---

[11]Quoting the district court in *MacDonald* v. *Monsanto Co.* (E.D.Tex. 1993) 813 F.Supp. 1258, 1261, L/P asserts this was a "major consideration" behind *Cipollone*'s holding. We disagree with the district court's assessment, unsupported by citation, that this factor played a critical role in the Supreme Court's analysis. Shortly after briefing was completed in this case, the Fifth Circuit reversed *MacDonald* and held FIFRA preempted the plaintiff's failure-to-warn claims. (*MacDonald* v. *Monsanto Co., supra,* 27 F.3d 1021.)

*expressly* preempts common law tort actions; arguments addressed to theories of implied preemption are therefore misplaced. (See 505 U.S. at p. __ [120 L.Ed.2d at pp. 423-424, 112 S.Ct. at p. 2618] (plur. opn.).) In any event, while FIFRA does not require identical warnings, its detailed scheme for regulating pesticide labels undoubtedly contemplates uniform labeling and packaging standards. (*Papas I, supra*, 926 F.2d at pp. 1025-1026 & fn. 6; see 40 C.F.R. § 156.10(h)(1) (1992).) As the *Papas I* court noted, "This objective of achieving uniformity in labeling was endorsed by Congress: in 1988, without changing the language of § 136v(b) . . . Congress added the heading 'Uniformity' to this section. A jury determination that a label was inadequate would require that the manufacturer change the label or risk additional suits for damages. Such a change, if permitted by the EPA, would destroy the uniformity that Congress and the EPA seeks to achieve in pesticide labeling because the warning label for that pesticide would not be based on the same criteria the EPA uses to establish warnings for all other pesticides." (926 F.2d at pp. 1025-1026.)[12]

L/P further argues *Cipollone* should not govern our interpretation because the cigarette acts and FIFRA were born of different circumstances. In contrast to the "shock wave" surrounding the Surgeon General's 1963 report on smoking and the resulting federal tobacco legislation, L/P asserts, the adoption and amendment of FIFRA occurred without significant controversy or attention. L/P provides neither authority nor support in the record for this characterization.[13] At any rate, we fail to see the relevance of the purported distinction to the question of express preemption. L/P's related argument that courts "did not seriously consider" FIFRA preemption until after *Cipollone* was decided is simply wrong; while the authorities were not unanimous, numerous pre-*Cipollone* opinions found preemption. (See, e.g., *Arkansas-Platte I, supra*, 959 F.2d 158; *Papas I, supra*, 926 F.2d 1019; *Herr* v. *Carolina Log Bldgs., Inc.* (S.D.Ind. 1989) 771 F.Supp. 958; *Fisher* v. *Chevron Chemical Co.* (W.D.Mo. 1989) 716 F.Supp. 1283; *Fitzgerald* v. *Mallinckrodt, Inc.* (E.D.Mich. 1987) 681 F.Supp. 404.)

L/P's remaining arguments merit only brief comment. We believe *Ferebee* v. *Chevron Chemical Co.* (D.C. Cir. 1984) 736 F.2d 1529 [237 App.D.C. 164], which predates *Cipollone* and does not analyze FIFRA in terms of express preemption, is no longer good law. (See *Stamps* v. *Collagen Corp.*,

[12]As previously noted, the pre-*Cipollone Papas I* court concluded FIFRA impliedly preempts common law claims. In *Papas II*, the court reached the same conclusion under an express preemption analysis. (*Papas II, supra*, 985 F.2d at p. 518.)

[13]In fact, we note the statute's 1972 transformation into a comprehensive regulatory scheme was generated by concerns over the health risks of "DDT" and other chemical pesticides. (*Burke* v. *Dow Chemical Co., supra*, 797 F.Supp. at p. 1134.)

*supra*, 984 F.2d at pp. 1424-1425 [holding *Ferebee* did not survive *Cipollone*]; *King* v. *E.I. DuPont de Nemours and Co., supra*, 996 F.2d at p. 1351.) While at least one post-*Cipollone* opinion holds FIFRA does not preempt failure-to-warn claims (*Couture* v. *Dow Chemical U.S.A.* (D.Mont. 1992) 804 F.Supp. 1298), we agree with the majority of courts that have found the preemption clause construed in *Cipollone* indistinguishable from 7 United States Code section 136v(b).[14]

L/P's reliance on *CSX Transportation* v. *Easterwood* (1993) __ U.S. __ [123 L.Ed.2d 387, 113 S.Ct. 1732] is misplaced. *Easterwood* concerned preemption of common law damage actions based on allegedly inadequate railroad crossing warnings. The Supreme Court noted the law in question contained no language that even purported to preempt the plaintiff's claim. (__ U.S. at p. __ [123 L.Ed.2d at pp. 398-399, 113 S.Ct. at pp. 1739-1740].) *Selma Pressure Treating Co.* v. *Osmose Wood Preserving Co.* (1990) 221 Cal.App.3d 1601 [271 Cal.Rptr. 596] does not address FIFRA preemption and therefore is not authority on the issue. (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].)

We conclude *Cipollone, supra*, 505 U.S. 504 dictates that FIFRA's express preemption clause extends to common law failure-to-warn suits. Accordingly, summary judgment was properly granted.[15]

DISPOSITION

The judgment is affirmed.

Merrill, Acting P. J., and White, J.,* concurred.

---

[14]As previously noted, *MacDonald* v. *Monsanto Co., supra*, 813 F.Supp. 1258, finding FIFRA did not preempt state law tort claims, was reversed after briefing was completed in this case. Another post-*Cipollone* opinion relied on by L/P, *Burke* v. *Dow Chemical Co., supra*, 797 F.Supp. 1128, in fact holds FIFRA does not encompass failure-to-warn claims not based on labeling or packaging, but *does* preempt failure-to-warn claims based on mislabeling. (*Id.* at p. 1140.)

[15]We therefore do not reach the statute of limitations issue raised by Koppers.

*Retired Presiding Justice of the Court of Appeal, First District, sitting under assignment by the Chairperson of the Judicial Council.