[No. F034621. Fifth Dist. Dec. 10, 2001.]

SUN VALLEY PACKING et al., Plaintiffs and Respondents, v. CONSEP, INC., Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts 3 through 9.

316

**COUNSEL**

Borton, Petrini & Conron and Dale Dorfmeier for Defendant and Appellant.

Law Offices of Joseph A. Uremovic and Joseph A. Uremovic for Plaintiffs and Respondents.

## OPINION

**LEVY, J.**—The Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) is a comprehensive statutory scheme that regulates the use, sales and labeling of all pesticides sold in the United States. (7 U.S.C. § 136 et seq.) FIFRA expressly prohibits states from imposing "any requirements for labeling or packaging in addition to or different from those required" under the act. (7 U.S.C. § 136v(b).) Consequently, any state law claim that effectively requires a manufacturer to include different or additional information on a pesticide's federally approved label is preempted. (*Taylor Ag Industries v. Pure-Gro* (9th Cir. 1995) 54 F.3d 555, 561.)

The primary focus of this appeal is whether FIFRA preempts respondents' state law claims against the manufacturer of a pest control product for breach of an express warranty and negligence. The trial court concluded the statements at issue constituted a guarantee that was outside of the label. Consequently, the court ruled that the FIFRA preemption clause did not apply.

Appellant, Consep, Inc., disagrees with the trial court's analysis. According to Consep, its agent's representations were limited to the efficacy of the product and thus were consistent with the approved label. Therefore, Consep argues, the state law claims arising from the breach of this warranty are preempted. Consep further contends the trial court misapplied certain aspects of California law.

However, Consep's logic is unpersuasive. Since the express oral warranty was based on a recommended use that was contrary to the label instructions, FIFRA does not preempt the resulting state claims. Further, as discussed in the unpublished part of this opinion, the court's construction of the applicable California law was correct. Thus, the judgment will be affirmed.

### STATEMENT OF THE CASE AND FACTS

Plaintiffs and respondents, Walt Jones, Brian Jones and Brad Jones grow tree fruit. They also pack, sell and ship the fruit through their family owned and operated packinghouse, Sun Valley Packing. With respect to pest control, respondents depend on recommendations from licensed pest control advisers (PCA's).

In 1996, based on the advice of PCA Geoff McInnes, respondents used a mating disruption product called Isomate to control oriental fruit moths. This product does not kill the pests. Rather, it releases the same pheromone that is emitted by female moths to attract males. The males become confused by the

overlapping areas of pheromone and are unable to find the females. Since it is the larva that damages the fruit, this disruption in adult mating can provide very effective protection. Respondents suffered no oriental fruit moth damage the year they used Isomate.

In the fall of 1996, Consep introduced CheckMate SF. This is a mating-disruption product aimed at two pests, oriental fruit moths and peach twig borers. The label directs the consumer to "Apply the first application early in the season, after detection of the first oriental fruit moth and prior to detection of the first peach twig borer moth . . . ." CheckMate SF provides protection for 90 to 115 days, and thus needs to be applied only twice during the season. In contrast, Isomate is effective for 45 to 60 days.

In December 1996, Buck Bonilla, a Consep representative, conducted a seminar for PCA's. As part of this product presentation, Bonilla explained that growers had two timing options for the use of CheckMate SF. The product dispensers could be hung either early in the season as directed on the label, i.e., at biofix, or at midseason.

Respondents began pest control for the 1997 season with the program that had been successful in 1996. McInnes suggested to respondents in mid-February that they use CheckMate SF for that year. However, by this time the Isomate had already been ordered. Isomate was used for the first application.

As the season progressed, McInnes continued to recommend CheckMate SF. In mid-May, respondents met with McInnes and Bonilla to discuss using CheckMate SF instead of Isomate for the second application. In comparing the two products, Bonilla extolled the virtues of CheckMate SF. According to Bonilla, spraying with the soft chemistry pesticide Bacillus thuringiensis (Bt) would clean up any oriental fruit moth or peach twig borer larvae then existing in the orchards. Thereafter, the CheckMate SF would control these pests.

Before agreeing to purchase CheckMate SF, Brad Jones wanted a guarantee that this product would protect the orchards against oriental fruit moth and peach twig borer damage. McInnes recalled Jones asking Bonilla "if he guaranteed that the crop would stay clean, that we wouldn't have worms. And [Bonilla] said, 'Oh, yeah, I guarantee it. I guarantee it.' " At that point, Jones ordered the CheckMate SF.

Respondents followed Bonilla's specific instructions for the use of Check-Mate SF. They sprayed their orchards with Bt and then hung the dispensers

as directed. However, in mid-June, approximately two to two and a half weeks later, there were signs of a growing peach twig borer population. Within three to four weeks the peach twig borer problem was serious. Despite using harsh pesticides at this stage, respondents could not bring the problem under control. Rather, high numbers of worms remained in the fruit.

In early July respondents abandoned the CheckMate SF program. They removed the dispensers from most of the orchards and sprayed with a harsh pesticide. Within 10 days respondents were able to get the worms under control in the orchards where the CheckMate SF had been removed. However, by this time respondents had suffered a substantial crop loss attributable to peach twig borers.

Respondents filed a complaint against Consep and the retailer of Consep's product, Helena Chemical. The jury found Consep and Helena Chemical were liable for the crop loss and awarded respondents $714,090.94 in damages. The jury found that Consep made an express warranty, breached that warranty, and was negligent.

## DISCUSSION

1. *Respondents' warranty and negligence claims are not preempted.*

Through labeling and registration requirements, FIFRA governs the use and sale of pesticides in the United States. (*Louisiana-Pacific Corp. v. Koppers Co.* (1995) 32 Cal.App.4th 599, 603 [38 Cal.Rptr.2d 257].) Under this scheme, a pesticide must be registered with the United States Environmental Protection Agency (EPA) before it is sold. (*Etcheverry v. Tri-Ag Service, Inc.* (2000) 22 Cal.4th 316, 321 [93 Cal.Rptr.2d 36, 993 P.2d 366].) The EPA will not register a pesticide unless it determines that the pesticide's labeling complies with FIFRA's requirements. (*Ibid.*)

To obtain registration for its product, a manufacturer must first petition the EPA. (7 U.S.C. § 136a.) As part of this process, the manufacturer must submit draft label language that complies with detailed requirements. These labeling requisites include a list of ingredients, directions for use, and any information known to the manufacturer regarding " 'unreasonable adverse effects of the pesticide on man or the environment.' " (*Etcheverry v. Tri-Ag Service, Inc., supra,* 22 Cal.4th at p. 321.)

If the EPA concludes the label is inaccurate or inadequate, the pesticide will be considered "misbranded" and registration will be denied. (7 U.S.C. § 136(q).) Further, the pesticide must perform its intended function without

" 'any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide.' " (*Etcheverry v. Tri-Ag Service, Inc., supra,* 22 Cal.4th at p. 321.)

FIFRA permits a state to "regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by" FIFRA. (7 U.S.C. § 136v(a).) To maintain uniformity, FIFRA expressly prohibits states from imposing "any requirements for labeling or packaging in addition to or different from those required under" the act. (7 U.S.C. § 136v(b).) ▪ Under the supremacy clause of the United States Constitution, any state law or claim that requires a pesticide manufacturer to conform to a state law standard of care in its labeling and packaging practices is preempted. (*Taylor Ag Industries v. Pure-Gro, supra,* 54 F.3d at p. 559.)

In establishing the gross parameters of FIFRA preemption, the courts have looked to *Cipollone v. Liggett Group, Inc.* (1992) 505 U.S. 504 [112 S.Ct. 2608, 120 L.Ed.2d 407] for guidance. There, in the context of a preemption provision in the Public Health Cigarette Smoking Act of 1969 (1969 Cigarette Act), the Supreme Court concluded that state failure to warn claims are preempted to the extent they require a showing that the defendants' advertising or promotions should have included additional or clearer warnings. (*Cipollone, supra,* at p. 524 [112 S.Ct. at pp. 2621-2622].) However, the court found that preemption did not apply to claims that rely solely on the defendants' testing or research practices or other actions unrelated to advertising or promotion. (*Ibid.*) Further, breach of express warranty claims based on representations voluntarily made are not preempted by the 1969 Cigarette Act. (*Cipollone,* at pp. 525-526 [112 S.Ct. at pp. 2622-2623].)

There is no notable difference between the preemption provision language in the 1969 Cigarette Act and the corresponding language in FIFRA. (*Taylor Ag Industries v. Pure-Gro, supra,* 54 F.3d at p. 559.) Consequently, the courts considering FIFRA have adapted the United States Supreme Court's approach in *Cipollone.* ▪ " '[T]he central inquiry in each case is whether the legal duty that is the predicate of the common law damages action constitutes a State "requirement[] for labeling or packaging in addition to or different from" the FIFRA requirements . . . .' " (*Etcheverry v. Tri-Ag Service, Inc., supra,* 22 Cal.4th at p. 335.) Thus, when a state law claim, however couched, would effectively require a manufacturer to include additional or different information in a pesticide's federally approved label or promotional material, it is preempted by FIFRA. (*Worm v. American Cyanamid Co.* (4th Cir. 1993) 5 F.3d 744, 749.)

When this approach is applied, certain categories of claims are consistently dismissed. Claims that are founded on a failure to warn of the risks of

322

using the pesticide, or on breach of an express warranty required and approved by the EPA are preempted by FIFRA. (*Etcheverry v. Tri-Ag Service, Inc., supra,* 22 Cal.4th at p. 334; *Welchert v. American Cyanamid, Inc.* (8th Cir. 1995) 59 F.3d 69, 72-73.) These claims challenge the product label itself, either directly or indirectly. Further, preemption cannot be avoided simply because the challenged misrepresentations or warranties were made separately from the label. Off-label statements are preempted if they merely repeat information in the label itself. (*Kuiper v. American Cyanamid Co.* (7th Cir. 1997) 131 F.3d 656, 662-663.)

■ However, FIFRA does not preempt the entire field of pesticide regulation. Claims that are not label-based are not preempted. Accordingly, courts have permitted injured plaintiffs to assert state law claims against pesticide manufacturers for negligent testing, formulation, or manufacture of their products. (*Worm v. American Cyanamid Co., supra,* 5 F.3d at p. 749.) More importantly here, where a pesticide manufacturer or retailer has *voluntarily* warranted a product's fitness for a particular purpose, courts have permitted the plaintiffs to assert state law claims for breach of that warranty. (*Prather v. Ciba-Geigy Corp.* (W.D.La. 1994) 852 F.Supp. 530, 532.) Such a voluntary contractual commitment is not preempted. It is a warranty " 'imposed by the warrantor,' " rather than a requirement imposed by a state. (*Papas v. Upjohn Co.* (11th Cir. 1993) 985 F.2d 516, 520.) The critical question is whether such a warranty actually addresses matters outside the scope of the required label. If so, an action may lie. (*Etcheverry v. Tri-Ag Service, Inc., supra,* 22 Cal.4th at p. 337.)

■ Here, Consep, through its agent Bonilla, recommended a use of CheckMate SF that was contrary to the label directions and then guaranteed this procedure would control the target pests. When respondents suffered crop damage due to the ineffectiveness of this pest control program, they asserted claims for breach of express warranty and negligence against Consep.

Consep characterizes respondents' claims as being label based. According to Consep, the warranty was simply that the product would work as it was labeled to do. Consep notes that, in approving the CheckMate SF label, the EPA determined it would control the listed pests. Thus, Consep argues, permitting state claims founded on the ineffectiveness of this product would be tantamount to allowing California to regulate pesticide labeling indirectly in violation of FIFRA.

However, Consep misconstrues respondents' theory. Respondents are not basing their breach of express warranty and negligence claims on a general

warranty of fitness. Rather, respondents are relying on Consep's express oral guarantee that CheckMate SF would control peach twig borers when applied for the first time midseason. As explained below, FIFRA does not preempt the claims based on this guarantee.

First, the statements at issue did not merely repeat information in the label itself. Rather, Consep's recommended application schedule contradicted the EPA approved label directions. The label directed a first application early in the season and a second midseason application. Thus, Consep's statements were clearly "off-label." Second, Consep voluntarily made this guarantee in order to induce respondents to purchase its product. Consequently, Consep's duty to honor that promise was self-imposed. FIFRA preemption is limited to requirements imposed by a state.

In sum, Consep's express warranty falls outside the scope of the Check-Mate SF label. Thus, respondents are not challenging the adequacy of that label, either directly or indirectly. Since this lawsuit does not seek to impose "any requirements for labeling or packaging in addition to or different from those required under" FIFRA (7 U.S.C. § 136v(b)), respondents' claims are not preempted.[1]

2. *FIFRA has no impact on the label's damage limitation.*

The relevant CheckMate SF label contains the following paragraph entitled "WARRANTY AND LIMITATION OF DAMAGES": "Consep, Inc. warrants that this material conforms to the chemical description on the label. Consep, Inc. neither makes, nor authorizes any agent or representative to make, any other warranty of fitness or of merchantability, guarantee or representation, express or implied, concerning this material. Consep, Inc.'s maximum liability for breach of this warranty shall not exceed the purchase price of this product. Buyer and user acknowledge and assume all risks and liabilities resulting from the handling, storage and use of this material, whether in accordance with directions or not."

■ Consep contends that, because the CheckMate SF label was approved by the EPA, this paragraph must be enforced. Consequently, Consep argues its maximum liability for breach of warranty is limited to the purchase price of the product. According to Consep, the trial court's application of California law to the damage limitation and warranty disclaimer violates the FIFRA preemption rules.

---

[1]Consep has requested this court to take judicial notice of various EPA documents pertaining to CheckMate SF label modifications. However, these documents are not relevant to the disposition of this appeal. Therefore, Consep's request is denied.

*Kawamata Farms v. United Agri Products* (1997) 86 Hawaii 214 [948 P.2d 1055] presented a similar situation. There the trial court refused to enforce a pesticide label's limitation of liability and warranty disclaimer on unconscionability grounds. The trial court held that these clauses escaped preemption by FIFRA because neither one was required by FIFRA. (*Kawamata Farms*, at p. 1081.)

The Hawaii Supreme Court agreed with this analysis. The trial court's ruling did not force the defendants to remove or alter the subject label. Rather, certain clauses were simply deemed unenforceable. (*Kawamata Farms v. United Agri Products, supra,* 948 P.2d at p. 1081.) Consequently, the trial court did not violate FIFRA. Moreover, the Hawaii Supreme Court refused to interpret FIFRA so as to allow a manufacturer of a pesticide to avoid tort liability merely by placing a disclaimer on a label and then claiming FIFRA preemption. (*Id.* at pp. 1081-1082.)

The *Kawamata Farms* analysis is reasonable and should be applied here. Since FIFRA does not require a pesticide label to include a damages limitation clause, applying state law to determine whether such a clause is valid does not constitute " 'a State "requirement[] for labeling or packaging in addition to or different from" the FIFRA requirements . . . .' " (*Etcheverry v. Tri-Ag Service, Inc., supra,* 22 Cal.4th at p. 335.) Therefore, when the trial court refused to enforce the damage limitation provision contained in the EPA-approved CheckMate SF label, it did not violate FIFRA.

3.-9.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondents.

Buckley, Acting P. J., and Cornell, J., concurred.

---

*See footnote, *ante*, page 315.