Opinion
 

 LAMBDEN, J.
 

 Cotter & Company (Cotter) appeals the trial court’s denial of its summary judgment motion and the granting of the People’s cross motion for summary adjudication as to Cotter’s affirmative defense alleging preemption. Cotter contends the Federal Hazardous Substances Act (FHSA) preempts California’s Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65). We find the FHSA does not preempt the warning requirements of Proposition 65 and affirm.
 

 Background
 

 As You Sow (AYS), a nonprofit organization, investigates and sometimes litigates possible Proposition 65
 
 [1]
 
 violations. Health and Safety Code
 
 [2]
 
 section 25249.6 requires warnings for products causing cancer or reproductive toxicity. Toluene is a reproductive toxin which requires a warning pursuant to Proposition 65.
 
 [3]
 

 On December 10, 1992, AYS sent a 60-day notice pursuant to section 25249.7 to the Attorney General of the State of California alleging that Cotter and 3 other paint and coatings manufacturers failed to provide warnings of toluene exposure in violation of Proposition 65.
 
 [4]
 
 Cotter is a national member-owned cooperative with 300 to 500 True Value Hardware stores in California.
 

 
 *1377
 
 On September 17, 1993, the Attorney General filed a suit against Cotter and three other companies
 
 [5]
 
 alleging they violated Proposition 65 and Business and Professions Code section 17200 et seq. On July 23, 1994, Cotter and the People entered into a permanent injunction pursuant to stipulation requiring Cotter to take certain steps to provide warnings for its paint products.
 

 Cotter filed a motion for summary judgment alleging Proposition 65’s regulations involved “cautionary labeling requirements” as defined by the FHSA. Consequently, Cotter argued, federal law has preempted Proposition 65. In addition, Cotter alleged it could only comply with Proposition 65 by labeling its products; therefore Proposition 65 constituted a de facto labeling requirement. The People responded by filing opposition to Cotter’s motion and a cross-motion for summary adjudication to Cotter’s fifth affirmative defense, which alleged preemption of Proposition 65 by the FHSA. On March 9, 1993, the court denied summary judgment to Cotter and granted summary adjudication to the People on the fifth affirmative defense.
 

 Cotter and the People entered into a consent judgment on June 9, 1995, resolving the litigation and requiring Cotter to pay $275,000 as penalties and restitution for the Proposition 65 violations. The consent judgment permitted Cotter to appeal from the order on preemption.
 

 Statutory Background
 

 Proposition 65
 

 Proposition 65 states, in part: “No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual . . . .” (§ 25249.6.) Twelve months after the statute designates a substance as toxic, products containing the listed toxic substance must have warnings about the health risks. (§ 25249.10, subd. (b).)
 

 The statute does not define “warning,” but explains: “ ‘Warning’ within the meaning of Section 25249.6 need not be provided separately to each exposed individual and may be provided by general methods such as labels on consumer products, inclusion of notices in mailings to water customers, posting of notices, placing notices in public news media, and the like,
 
 *1378
 
 provided that the warning accomplished is clear and reasonable.” (§ 25249.11, subd. (f).) The regulations describe four types of “safe harbor” warnings for consumer products: product labeling, “shelf labeling, signs, menus, or a combination thereof.” (Cal. Code Regs., tit. 22, § 12601, subd. (b)(1)(B).)
 

 The warnings must be “prominently placed upon a product’s label or other labeling or displayed at the retail outlet with such conspicuousness, as compared with other words, statements, designs, or devices in the label, labeling or display as to render it likely to be read and understood by an ordinary individual under customary conditions of purchase or use.” (Cal. Code Regs., tit. 22, § 12601, subd. (b)(3).) Thus, a merchant can comply with Proposition 65 by posting a sign stating the products are known to the state to cause cancer and/or are reproductively toxic.
 

 The FHSA
 

 Congress enacted the FHSA in 1960 and the act itself does not contain a section stating its purpose. (See
 
 Lee
 
 v.
 
 Boyle-Midway Household Products, Inc.
 
 (W.D.Pa. 1992) 792 F.Supp. 1001, 1008.) However, the House Committee on Interstate and Foreign Commerce stated, “ ‘The purpose of this bill is to provide
 
 nationally uniform
 
 requirements for
 
 adequate
 
 cautionary labeling of packages of hazardous substances which are sold in interstate commerce and are intended or suitable for household use.’ ”
 
 (Ibid.,
 
 quoting H.R.Rep. No. 1861, 86th Cong., 2d Sess., p. 1 (1960), reprinted in 1960 U.S. Code Cong. & Admin. News, p. 2833.)
 

 In 1966, Congress added a limited preemption provision to protect manufacturers from having to create different labels to comply with varying state regulations. It modified the preemption provision in 1976 to state: “ ‘Except as provided in paragraphs (2) and (3), if a hazardous substance or its packaging is subject to a cautionary labeling requirement under section 2(p) or 3(b) [subsection (p) of this section or section 1262(b) of this title] designed to protect against a risk of illness or injury associated with the substance, no State or political subdivision of a State may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the same risk of illness or injury unless such cautionary labeling requirement is identical to the labeling requirement under section 2(p) or 3(b) [subsection (p) of this section or section 1262(b) of this title].’ ” (15 U.S.C. § 1261 note (b)(1)(A) (hereinafter 15 U.S.C. section 1261 note).)
 

 Although the FHSA does not define “cautionary label,” it does define label as the following: “The term ‘label’ means a display of written, printed,
 
 *1379
 
 or graphic matter upon the immediate container of any substance or, in the case of an article which is unpackaged or is not packaged in an immediate container intended or suitable for delivery to the ultimate consumer, a display of such matter directly upon the article involved or upon a tag or other suitable material affixed thereto; and a requirement made by or under authority of this chapter that any word, statement, or other information appear on the label shall not be considered to be complied with unless such word, statement, or other information also appears (1) on the outside container or wrapper, if any there be, unless it is easily legible through the outside container or wrapper and (2) on all accompanying literature where there are directions for use, written or otherwise.” (15 U.S.C. § 1261(n).)
 

 Discussion
 

 Cotter raises two issues on appeal: (1) Does the FHSA preempt Proposition 65 warnings because point of sale signs are labels as defined by the FHSA? (2) If point of sale signs are not labels, does the FHSA still preempt Proposition 65 because the state statute imposes a de facto labeling requirement? We address each of these issues separately.
 

 I.
 
 Point of Sale Signs Are Not Labels Under the FHSA
 

 Cotter contends the court erred in denying its summary judgment motion because Proposition 65 imposes a “cautionary labeling requirement” which is preempted by the FHSA. Since Cotter presents a facial challenge to Proposition 65, it must establish Proposition 65 would not be valid under any set of circumstances.
 
 (Chemical Specialties Mfrs. Ass’n, Inc.
 
 v.
 
 Allenby
 
 (9th Cir. 1992) 958 F.2d 941, 943, cert. den. (1992) 506 U.S. 825 [113 S.Ct. 80, 121 L.Ed.2d 44]
 
 (Allenby).)
 
 Thus, to find preemption, we “ ‘must determine that
 
 all
 
 possible consumer product warnings that would satisfy Proposition 65 conflict with provisions’ ” of the FHSA.
 
 (Comm, of Dental Amalgam Mfrs. & Distribs.
 
 v.
 
 Stratton
 
 (9th Cir. 1996) 92 F.3d 807, 810
 
 (Stratton).)
 

 The People claim Cotter could satisfy Proposition 65 by using point of sale signs. This method, they assert, does not conflict with the preemption provision of the FHSA. They rely on
 
 Allenby, supra,
 
 958 F.2d 941, which held such signs are not labels under the FHSA. Cotter, however, claims the Ninth Circuit in
 
 Allenby
 
 misapplied and misinterpreted federal and state law and the trial court erred by following
 
 Allenby.
 

 In deciding whether
 
 Allenby
 
 represents good law, we first review the federal preemption doctrine and examine the most recent United States
 
 *1380
 
 Supreme Court decisions. We then explain why
 
 Allenby
 
 correctly found point of sale signs are not labels under the FHSA. .
 

 A.
 
 Standard of Review
 

 The trial court denied Cotter’s motion for summary judgment based on preemption and granted the People’s motion for summary adjudication to Cotter’s defense of preemption. Summary adjudication was proper only if the defense of preemption presented no triable issue of material fact and Cotter could not raise the defense as a matter of law. (Code Civ. Proc., § 437c, subd. (f)(1).) Since the parties do not dispute the facts related to preemption and the summary adjudication raises a purely legal question, we employ de novo review.
 
 (Schrader
 
 v.
 
 Scott
 
 (1992) 8 Cal.App.4th 1679, 1684 [11 Cal.Rptr.2d 433].)
 

 B.
 
 Preemption Doctrine
 

 “Preemption analysis starts with the presumption that the traditional police powers of states are not displaced by federal law unless displacement was the ‘clear and manifest purpose of Congress.’ ”
 
 (Allenby, supra,
 
 958 F.2d 941, 943; accord with
 
 Medtronic, Inc.
 
 v.
 
 Lohr
 
 (1996)_U.S._,_ [116 S.Ct. 2240, 2248, 135 L.Ed.2d 700]
 
 (Medtronic).)
 

 [6]
 

 One reason for this presumption is Congress has the power to make its intention clear. “[I]f the court erroneously finds preemption, the State can do nothing about it, while if the court errs in the other direction, Congress can correct the problem.” (958 F.2d at p. 943.)
 

 The second presumption underlying a preemption analysis requires a determination of Congress’s purpose, which “ ‘is the ultimate touchstone’ in every pre-emption case. [Citations.]”
 
 (Medtronic,
 
 supra,_U.S____[116 S.Ct. 2240, 2250].) We determine intent primarily “from the language of the pre-emption statute and the ‘statutory framework’ surrounding it. [Citation.]” (I
 
 d.
 
 at p._[116 S.Ct. at p. 2251].) “Also relevant, however, is the ‘structure and purpose of the statute as a whole,’ [citation], as revealed not only in the text, but through the reviewing court’s reasoned understanding of
 
 *1381
 
 the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law.”
 
 (Ibid.)
 

 If the statute does not have an express preemption clause, state law is only preempted if (1) the law actually conflicts with federal law, or (2) federal law “so thoroughly occupies a legislative field “ ‘ “as to make reasonable the inference that Congress left no room for the States to supplement it.” ’ [Citation.]”
 
 (Cipollone
 
 v.
 
 Liggett Group, Inc.
 
 (1992) 505 U.S. 504, 516 [112 S.Ct. 2608, 2617, 120 L.Ed.2d 407]
 
 (Cipollone).)
 
 “When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a ‘reliable indicium of congressional intent with respect to state authority’ [citation], ‘there is no need to infer congressional intent to pre-empt state laws from the substantive provisions’ of the legislation. [Citation.]”
 
 (Id.
 
 at p. 517 [112 S.Ct. at p. 2618].)
 

 In this case, Congress enacted an express preemption clause and we only need to “identify the domain expressly pre-empted.” (See
 
 Cipollone, supra,
 
 505 U.S. 504, 517 [112 S.Ct. 2608, 2618].) Moreover, we must narrowly read the preemption clause because Proposition 65 is an instance of the state exercising its police power.
 
 (Medtronic,
 
 supra,_U.S._,_[116 S.Ct. 2240, 2250];
 
 Ketchum
 
 v.
 
 Hyundai Motor Co.
 
 (1996) 49 Cal.App.4th 1672, 1678 [57 Cal.Rptr.2d 595].)
 

 C.
 
 Cipollone and Medtronic
 

 The two most recent United States Supreme Court cases to consider preemption are
 
 Cipollone, supra,
 
 505 U.S. 504 and
 
 Medtronic,
 
 supra,_U.S. _[116 S.Ct. 2240]. Both the People and Cotter contend
 
 Cipollone
 
 supports their position. The Supreme Court decided
 
 Medtronic
 
 while this appeal was pending, and both parties discussed its impact on this appeal at oral argument.
 

 In
 
 Cipollone,
 
 the United States Supreme Court found the amended Public Health Cigarette Smoking Act of 1969 (Smoking Act) preempted common law claims based on a failure to warn about the hazards of smoking, but not those premised on express warranty, intentional fraud and misrepresentation, or conspiracy. (505 U.S. 504.) The federal statute set forth the exact warning to be placed on each package
 
 [7]
 
 and the preemption clause specified ‘“[n]o requirement or prohibition based on smoking and health
 
 *1382
 
 shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.’ ”
 
 (Id.
 
 at p. 515 [112 S.Ct. at p. 2617].)
 

 When determining whether federal law expressly preempted the common law claims, the court in
 
 Cipollone,
 
 held the following as the central inquiry: “[W]e ask whether the legal duty that is the predicate of the common-law damages action constitutes a ‘requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion,’ giving that clause a fair but narrow reading.” (505 U.S. 504, 524 [112 S.Ct. 2608, 2621].) Thus, federal law preempted state claims based on inadequate warnings about health risks.
 

 The United States Supreme Court further refined preemption analysis in
 
 Medtronic,
 
 supra,_U.S._[116 S.Ct. 2240]. In
 
 Medtronic,
 
 the manufacturer of a pacemaker argued the Medical Device Amendments of 1976 (MDA) to the federal Food, Drug and Cosmetics Act governed the requirements for medical devices and its preemption clause prevented the plaintiff’s claims of negligence and strict liability based on a defective device and inadequate warnings.
 
 (Id.
 
 at p._[116 S.Ct. at p. 2250].) The preemption provision under the MDA provided: “[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement— [¶ (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and [H (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.” (21 U.S.C. § 360k(a).)
 

 The court in
 
 Medtronic
 
 stated courts should broadly interpret the preemption provision of federal statutes with limited applicability and narrowly interpret those statutes with general applicability. Accordingly, the court in
 
 Cipollone
 
 broadly interpreted the word “requirement” in the preemption provision because: “The pre-emptive statute in
 
 Cipollone
 
 was targeted at a limited set of state requirements—those ‘based on smoking and health’—and then only at a limited subset of the possible applications of those requirements—those involving the ‘advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of’ the federal statute. [Citation.]”
 
 (Medtronic, supra,
 
 _U.S. _,_ [116 S.Ct. 2240, 2252], fn. omitted.)
 

 In contrast to the Smoking Act, the MDA in
 
 Medtronic
 
 applied to all medical devices, warranting a narrow interpretation of “requirement.” The
 
 *1383
 
 court defined “requirement” under the MDA to include only those situations in which the state and federal government had imposed a conflicting “duty” on the manufacturer.
 
 (Medtronic,
 
 supra,_U.S. _,_ [116 S.Ct. 2240, 2251].) The FDA approved the marketing of the pacemaker in
 
 Medtronic
 
 because it was “ ‘substantially equivalent’ to devices already on the market,” and had not specifically evaluated the pacemaker.
 
 (Id.
 
 at p__[116 S.Ct. at p. 2248].) Accordingly, the court found the MDA had not issued “any requirement” applicable to this device and it did not preempt the state claim alleging negligent design.
 
 (Id.
 
 at p__[116 S.Ct. at p. 2249].)
 

 The court in
 
 Medtronic
 
 also held the MDA did not preempt claims based on inadequate labeling. The MDA required manufacturers of every medical device to include a label containing “ ‘information for use, . . . and any relevant hazards, contraindications, side effects, and precautions.’ [Citation.]”
 
 (Medtronic, supra,
 
 _ U.S. _, _ [116 S.Ct. 2240, 2256].) The labeling requirements did not apply specifically to the pacemaker; therefore, the court found the federal government had not imposed a labeling “requirement” for the pacemaker.
 

 The court explained why a decision regarding preemption should consider the “generality” of the federal statute: “The generality of those requirements make [sic] this quite unlike a case in which the Federal Government has weighed the competing interests relevant to the particular requirement in question, reached an unambiguous conclusion about how those competing considerations should be resolved in a particular case or set of cases, and implemented that conclusion via a specific mandate on manufacturers or producers.”
 
 (Medtronic, supra,
 
 _ U.S. _, _ [116 S.Ct. 2240, 2258].) Instead, “. . . the federal requirements reflect important but entirely generic concerns about device regulation generally, not the sort of concerns regarding a specific device or field of device regulation which the statute or regulations were designed to protect from potentially contradictory state requirements.”
 
 (Ibid.)
 

 When both the state and federal requirements reflect “generic concerns” rather than specific regulations, they probably will not conflict, resulting in no preemption.
 
 (Medtronic,
 
 supra,_U.S._,_[116 S.Ct. 2240, 2258].) Preemption occurs “only where a particular state requirement threatens to interfere with a specific federal interest.”
 
 (Id.
 
 at p__[116 S.Ct. at p. 2257].)
 

 
 *1384
 
 D.
 
 The FHSA, Proposition 65, and Preemption
 

 Only one case,
 
 Allenby, supra,
 
 958 F.2d 941, has reviewed preemption under the FHSA and Proposition 65. It held the FHSA did not preempt Proposition 65.
 
 [8]
 

 Cotter argues
 
 Allenby
 
 does not represent good law because it conflicts with the holding in
 
 Cipollone,
 
 contradicts other state and federal decisions made post
 
 -Cipollone,
 
 and ignored and failed to defer to the conclusions of the Consumer Product Safety Commission (CPSC). To support its contention, Cotter cites one other Proposition 65 case in the federal district court
 
 (Committee of Dental Amalgam Alloy Mfrs.
 
 v.
 
 Henry
 
 (S.D.Cal. 1994) 871 F.Supp. 1278), which was recently reversed in
 
 Stratton, supra,
 
 92 F.3d 807, and tort claims preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA).
 

 Prior to assessing each of Cotter’s criticisms of
 
 Allenby,
 
 we briefly summarize Allenby's analysis of preemption under the FHSA and conduct our own independent analysis of preemption and the FHSA.
 

 1.
 
 Allenby
 

 When analyzing preemption under the FHSA, the court in
 
 Allenby, supra,
 
 958 F.2d 941, 946, noted the preemption provision in the FHSA only applies to “cautionary labeling” on packages (15 U.S.C. § 1261 note). The act defines labels as including accompanying literature only if the material contains “directions for use.” (15 U.S.C. § 1261(n).) Thus, if point of sale signs were not “directions for use,” they represented a method in which a manufacturer could satisfy Proposition 65 without requiring warning labels in addition to the FHSA.
 

 The court rejected the argument that Proposition 65 warnings “impliedly” direct the consumer to handle the product to “avoid or minimize direct exposure” and were therefore directions for use.
 
 (Allenby, supra,
 
 958 F.2d 941, 949.) The court explained this was a “nonsensical reading” of the term “directions for use” and it agreed with the lower court’s comments during oral argument about a sign stating, “ ‘this product may cause birth defects.’ ” The Ninth Circuit quoted the lower court as responding: “ ‘[D]oesn’t tell you whether it’s going to cause defects if you pour it on your feet, or if you drink it, or if you poke it in your ear, it just says that it may cause birth defects. How is that a direction for use?’ ”
 
 (Ibid.)
 
 Instead, the court in
 
 Allenby
 
 
 *1385
 
 determined Congress’s intent more likely related to “how much of a detergent to use, or how long a paint solvent should be mixed.”
 
 (Ibid.)
 

 [9]
 

 The court in
 
 Allenby
 
 concluded Proposition 65 did not frustrate any congressional purpose. The FHSA regulates cautionary labeling to promote uniformity but permits the states through the use of point of sale signs to regulate the sale and use of hazardous chemicals.
 
 (Allenby, supra,
 
 958 F.2d 941, 950.)
 

 2.
 
 Allenby’s analysis of labels under the FHSA remains good law post-Cipollone
 

 (i)
 
 Predicate duty analysis does not apply to general statutes
 

 Cotter argues
 
 Allenby
 
 is not good law because
 
 Cipollone, supra,
 
 505 U.S. 504, 524 [112 S.Ct. 2608, 2621], held the central inquiry for preemption is whether the state and federal statutes have the same predicate duty. Cotter contends Proposition 65 and the FHSA have the same “predicate duty”: the legal duty to warn of toxic dangers.
 

 Cotter, however, does not consider the recent decision of
 
 Medtronic,
 
 which explained the predicate duty analysis does not apply when the federal statute merely requires a general duty to inform users and purchasers of potentially dangerous items. (_U.S____[116 S.Ct. 2240, 2258].) When the predicate for the plaintiff’s claims is the general duty to inform users and purchasers of potentially dangerous items and the federal government has not implemented or enforced specific federal requirements, general obligations imposed by the state do not threaten the federal requirements.
 
 (Ibid.)
 

 Indeed a recent Ninth Circuit opinion, relying on the analysis of
 
 Medtronic,
 
 held the MDA does not preempt Proposition 65 warnings
 
 [10]
 
 for
 
 *1386
 
 dental amalgam.
 
 [11]
 

 (Stratton, supra,
 
 92 F.3d 807, 810.) “Proposition 65 is a state law of general applicability which was
 
 not
 
 enacted ‘with respect to’ medical devices.”
 
 (Id.
 
 at p. 813.) Rather, “Proposition 65 applies to
 
 all
 
 products and services that pose a health risk to the public.”
 
 (Ibid.)
 
 The court concluded: “Thus, we hold that the consumer warning requirement under California’s Proposition 65 is not ‘specific’ enough to trigger preemption because it is ‘not the kind[] of requirement^ that Congress and the FDA feared would impede the ability of federal regulators to implement and enforce specific federal requirements.’ ”
 
 (Ibid.)
 

 Following both
 
 Medtronic
 
 and
 
 Stratton,
 
 the “predicate duty” analysis for preemption does not apply when both the federal and state statutes require a general warning for a variety of products and do not target specific products. As noted above, Proposition 65 is a general statute which applies to all products and services posing a health risk. Similarly, the FHSA is a general statute which requires warnings on labels for substances it determines are hazardous. (15 U.S.C. § 1261.) A “ ‘hazardous substance’ ” includes: “Any substance or mixture of substances which (i) is toxic, (ii) is corrosive, (iii) is an irritant, (iv) is a strong sensitizer, (v) is flammable or combustible, or (vi) generates pressure through decomposition, heat, or other means, if such substance or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use, including reasonably foreseeable ingestion by children.” (15 U.S.C. § 1261(f)(1)(A).)
 

 Given the generality of Proposition 65 and the FHSA, Cotter’s criticism of
 
 Allenby
 
 for failing to consider the statutes’ predicate duty has no merit. Unlike the Smoking Act in
 
 Cipollone,
 
 which provided requirements for a particular product and specified the exact wording for the warning, the requirements of the FHSA apply to a variety of products in numerous industries. In this situation an analysis of the predicate duty becomes meaningless.
 

 (ii)
 
 Allenby correctly found point of sale signs are not labels
 

 Allenby’s analysis of labels under the FHSA does not contradict the reasoning in either
 
 Cipollone
 
 or
 
 Medtronic.
 

 [12]
 

 Our independent examination of Proposition 65 and the FHSA confirms Allenby’s finding on point of sale signs and the FHSA.
 

 
 *1387
 
 As with any state law regulating health and safety, we begin by presuming Proposition 65 is not displaced.
 
 (Medtronic, supra,
 
 U.S____ [116 S.Ct. 2240, 2248].) Since the FHSA does have a specific preemption clause, we need to determine “the domain expressly pre-empted.”
 
 (Cipollone, supra,
 
 505 U.S. 504, 517 [112 S.Ct. 2608, 2618].) We determine this “domain” by examining the language of the preemption statute, its “ ‘statutory framework,’ ” and the “structure and purpose of the statute as a whole”
 
 (Medtronic, supra,
 
 U.S. at p. [116 S.Ct. at p. 2251]).
 

 As already stressed, Congress enacted an explicit preemption provision in the FHSA prohibiting a state to establish a cautionary labeling requirement for hazardous substances covered by the FHSA “unless such cautionary labeling requirement is identical to the labeling requirement” in this act. (15 U.S.C. § 1261 note.) The act defines label as a “display of written, printed, or graphic matter upon the immediate container of any substance . . . and (2) on all accompanying literature where there are directions for use, written or otherwise.” (15 U.S.C. § 1261(n).)
 

 Congress chose to restrict the definition of a label to include accompanying literature only when that material contains “directions for use.” (15 U.S.C. § 1261(n).) These words indicate the warning must tell the user how to use the product. This situation resembles the one in
 
 Medtronic,
 
 where the court refused to interpret “requirement” in the preemption provision of the MDA to mean “remedy” because “. . . if Congress intended to preclude all common-law causes of action, it chose a singularly odd word with which to do it.”
 
 (Medtronic, supra,
 
 _U.S. _,_ [116 S.Ct. 2240, 2251-2252].) Similarly, if Congress wanted preemption under the FHSA to apply to all accompanying literature with “implied” directions for use, as Cotter argues, Congress could have specified that.
 

 In addition to examining the language of the FHSA, we must consider Congress’s stated purpose. The FHSA itself does not contain a section setting forth its purpose but Congress enacted the FHSA in 1960 to “ ‘provide nationally uniform requirements for adequate cautionary labeling of packages of hazardous substances which are sold in interstate commerce and are intended or suitable for household use.’ ”
 
 (Moss
 
 v.
 
 Parks Corp.
 
 (4th Cir. 1993) 985 F.2d 736, 739, citing House Com. on Interstate and Foreign Commerce, Federal Hazardous Substances Labeling Act, H.R.Rep. No. 1861, 86th Cong., 2d Sess., p. 2,
 
 supra,
 
 reprinted in 1960 U.S. Code Cong. & Admin. News,
 
 supra,
 
 p. 2833.) When Congress amended the FHSA in 1966, the legislative history discussed the impracticality of having the states produce potentially 50 different labels for a particular hazardous substance.
 
 (Jenkins
 
 v.
 
 James B. Day & Co.
 
 (1994) 69 Ohio St.3d 541, 545 [634 N.E.2d 998, 1001-1002].)
 

 
 *1388
 
 To assess Congress’s purpose we must also consider the structure and framework of the FHSA. Following
 
 Medtronic,
 
 supra,_U.S._,_[116 S.Ct. 2240, 2250], we must interpret the words in the preemption statute narrowly when the federal statute and state statute have general applicability.
 

 As already stressed, the FHSA is an extremely broad statute. It applies to numerous products in a variety of industries and it does not require specific language on the labels but “merely requires (1) that labels contain the signal word ‘warning’ or ‘caution’ and (2) words which describe the potential hazard.”
 
 (Allenby, supra,
 
 958 F.2d 941, 950.) Furthermore, the generality of these requirements makes it clear the federal government has not “weighed the competing interests relevant” to the particular hazardous material and has not “reached an unambiguous conclusion about how those competing considerations should be resolved in a particular case or set of cases, and implemented that conclusion via a specific mandate on manufacturers or producers”
 
 (Medtronic,
 
 supra,_U.S.___[1116 S.Ct. 2240, 2258]).
 

 Given the FHSA’s general applicability, point of sale signs are unlikely to interfere with the federal government’s objectives. Point of sale signs obviously do not require manufacturers to develop more than one label for all 50 states. Moreover, point of sale signs allow the state to regulate sales, a distinctively state interest, without imposing additional labeling requirements on packages. Rather than conflicting with the federal government’s objectives, they serve to further the purpose of the FHSA by providing a larger audience with information.
 

 Interpreting Proposition 65’s warnings as “implied” direction for use to the consumer to take “steps” to “reduce exposure,” as Cotter argues, would create an extensive preemption provision under the FHSA. With such a definition, purely informational signs could be considered implied directions for use. For example, signs merely rating material on the product’s appropriateness for minors or adults would constitute labeling. Indeed, price tags could be found to be implied directions for use as one should use expensive items sparingly.
 

 We, therefore, conclude
 
 Allenby
 
 correctly found the FHSA does not preempt Proposition 65 point of sale signs.
 
 [13]
 

 
 *1389
 
 3.
 
 Distinguishing FIFRA cases
 

 To support its argument of preemption, Cotter cites numerous FIFRA cases which found FIFRA preempted common law claims based on inadequate point of sale warnings.
 
 [14]
 

 (Taylor AG Industries
 
 v.
 
 Pure-Gro
 
 (9th Cir. 1995) 54 F.3d 555, 560
 
 (Taylor AG) Louisiana-Pacific Corp.
 
 v.
 
 Koppers Co.
 
 (1995) 32 Cal.App.4th 599 [38 Cal.Rptr.2d 257];
 
 Papas
 
 v.
 
 Upjohn Co.
 
 (11th Cir. 1993) 985 F.2d 516.) Although the preemption provision in FIFRA is essentially identical to the one in the FHSA,
 
 [15]
 
 that similarity should not obfuscate the differences between the statutes.
 

 Three material differences distinguish FIFRA cases from this case: (1) FIFRA defines a label more expansively than the FHSA; (2) FIFRA is not simply a labeling statute while the FHSA is; and (3) FIFRA cases are predominantly tort common law cases and this is a Proposition 65 enforcement action.
 

 (i)
 
 Differences between the statutes
 

 FIFRA broadly defines label as the following: “The term ‘labeling’ means all labels and all other written, printed, or graphic matter— [¶ (A) accompanying the pesticide or device at any time; or [¶ (B) to which reference is made on the label or in literature accompanying the pesticide or device, except to current official publications . . . .” (7 U.S.C. § 136(p)(2).) Congress designated matter “accompanying” the product as a label without any further qualification. Consequently, FIFRA cases do not help us determine Congress’s intent when it limited a label under the FHSA to mean accompanying literature providing “directions for use.”
 

 More significantly, when examining the “statutory framework” of FIFRA, the differences between the two federal statutes are magnified. Rather than
 
 *1390
 
 creating a mere labeling statute, Congress in 1972, “transformed it [FIFRA] into a comprehensive regulatory statute governing the use and sale of pesticides.”
 
 (Louisiana-Pacific Corp.
 
 v.
 
 Koppers Co., supra,
 
 32 Cal.App.4th 599, 603.) One of the cases emphasized by Cotter,
 
 Taylor AG, supra,
 
 54 F.3d 555, 560, noted the “rigorous label-approval process under FIFRA.” The court explained: “Although FIFRA does not prescribe the exact contents of labels, manufacturers are not free, ... to create pesticide labels in any manner they choose. Rather, ... the EPA approves each label only after a careful review of the product data and the draft label.”
 
 (Ibid.)
 

 Given the statutory framework of FIFRA, a broad interpretation of the word “label” under FIFRA is consistent with
 
 Medtronic.
 
 Not only does FIFRA define “label” expansively, but it represents a situation “in which the Federal Government has weighed the competing interests relevant to the particular requirement in question, reached an unambiguous conclusion about how those competing considerations should be resolved in a particular case or set of cases, and implemented that conclusion via a specific mandate on manufacturers or producers”
 
 (Medtronic,
 
 supra,_U.S----[116 S.Ct. 2240, 2258]).
 

 In contrast, as already stressed, the FHSA does not (1) have a label approval process, (2) specify the wording to be used on the label, or (3) regulate the sale or use of the hazardous products covered by the federal statute. Instead, as the People contend, Congress has left the states free to regulate the sale and use of these hazardous products. The FHSA has remained a labeling statute and the scope of its preemption differs significantly from FIFRA.
 
 [16]
 
 Accordingly, cases interpreting FIFRA have “limited relevance” to determinations of preemption and the FHSA. (See
 
 Jenkins
 
 v.
 
 James B. Day & Co., supra,
 
 634 N.E.2d 998, 1004, fn. 4.)
 
 [17]
 

 (ii)
 
 Differences between tort actions and state enforcement actions
 

 An additional reason for contending the FIFRA cases cited by Cotter are irrelevant, according to the People, is because they involve tort claims rather than the state’s enforcement of a statute. In response, Cotter claims FIFRA
 
 *1391
 
 tort cases provide an appropriate method of analysis for federal preemption under the FHSA since the basis for requiring a warning under common law and Proposition 65 is the same. Cotter argues “[w]here the reason is the same, the rule should be the same” (Civ. Code, § 3511), and “[t]he law respects form less than substance” (Civ. Code, § 3528).
 

 As Cotter asserts, enforcement and common law actions pose the same questions and issues in a determination of the “domain expressly preempted.” Accordingly, we used
 
 Cipollone
 
 and Medtronic, actions in tort, to determine the scope of preemption under the FHSA.
 

 After determining the preempted domain, the analyses of tort and enforcement actions diverge in a materially significant respect. Once the court determines a common law claim falls within the reach of the preemption clause, the analysis ceases. The federal government’s interest in promoting interstate commerce always trumps the individual’s interests in receiving damages.
 

 Unlike a tort action, an enforcement action requires the court to establish whether any method of compliance with the state statute falls outside the scope of the preemption provision. (See
 
 Stratton, supra, 92
 
 F.3d 807, 810.) If any method is beyond the reach of the preemption provision, the statute remains valid. The federal statute sets the standards for sufficient warnings (barring any tort claims on this basis), but does not necessarily prohibit the state from requiring warnings consistent with the preemption provision that regulate the use and sale of these products.
 

 Both
 
 Allenby, supra,
 
 958 F.2d 941, 948 and
 
 Taylor AG, supra,
 
 54 F.3d 555, 560 acknowledged this distinction when discussing preemption and FIFRA. The Ninth Circuit in
 
 Taylor AG
 
 rejected the argument “that liability should be imposed upon the Manufacturers for failure to warn arising from alleged deficiencies in advertisements, point-of-sale warnings, and other materials distributed in connections with a sale.” (54 F.3d at p. 561, fn. omitted.) The court in
 
 Taylor AG
 
 reconciled its holding with the one in
 
 Allenby
 
 by explaining the court in
 
 Allenby
 
 “merely” held “non-label warnings were not preempted by FIFRA,” but
 
 Allenby
 
 admitted “ ‘[t]he argument against product liability suits for inadequate labeling is strong.’ ”
 
 (Taylor AG, supra,
 
 at p. 561, fn. 2, quoting
 
 Allenby, supra,
 
 at p. 948.)
 

 Cotter claims the two Ninth Circuit cases,
 
 Allenby
 
 and
 
 Taylor AG,
 
 are inconsistent, with the latter representing the better law. However, as both the People and the court in
 
 Taylor AG
 
 point out, the two courts were simply
 
 *1392
 
 addressing different types of actions.
 
 [18]
 
 In finding Proposition 65 is not preempted under the FHSA, because point of sale signs are not labels and do not provide “directions for use,” we are not opening the door to common law tort claims premised on the inadequacy of the product label.
 

 Finally, Cotter claims tort actions and enforcement actions are the same because a company must pay a penalty when it violates the statute. The penalty, Cotter claims, has the same consequences as an award for damages. This argument, however, ignores the vital distinction between the two. As the People point out, an enforcement action never requires the court to assess the adequacy of the label, while that is the task facing the court in a tort action. In an enforcement action, the court simply looks to see whether the company has complied with the mandate of the statute.
 

 4.
 
 The CPSC’s interpretation of “label” under the FHSA is clearly erroneous
 

 Cotter contends the court in
 
 Allenby
 
 erred by ignoring the CPSC’s conclusion that point of sale signs qualify as a “direction for use.” In response to a request from the Chemical Specialties Manufacturers Association for an advisory opinion, Clement D. Earhardt III from the Office of General Counsel of the CPSC concluded on March 6, 1991, the following: “A warning that a product can cause cancer or birth defects is not an express direction for use. Nevertheless, it conveys the information that, in using the product, steps should be taken to minimize or eliminate exposure. Stated another way, the warning itself can also serve as a direction for use.” (Advisory Opn. No. 312 (Mar. 6, 1991) p. 3.) The opinion continued: “Therefore, although the warning quoted in your inquiry does not necessarily convey specific actions to be taken in the use of the product, it does convey information about how the product should be used (steps should be taken to reduce exposure). Accordingly, this office views the statement as a direction for use. It follows, therefore, that signs and the like bearing such warnings are ‘accompanying literature containing directions for use’ and thus are labeling under FHSA § 2(n).”
 
 (Id.
 
 at p. 4.)
 
 [19]
 

 The People respond that the defendant in
 
 Allenby
 
 presented this argument and, rather than ignoring it, the court clearly rejected it. Furthermore, the
 
 *1393
 
 People contend Advisory Opinion No. 312 is not a long-standing administrative application of the statute and is litigation inspired because it responds to a request during litigation from defense counsel in
 
 Allenby.
 
 Litigation-inspired opinions have no authority
 
 (Bowen
 
 v.
 
 Georgetown University Hospital
 
 (1988) 488 U.S. 204, 212 [109 S.Ct. 468, 473-474, 102 L.Ed.2d 493]), but generally courts have applied this rule only when the administrative agency is a party to the litigation.
 

 The People also claim letters from the general counsel state the March 6, 1991, advisory opinion “did not express a direct opinion on preemption. . . .”
 
 [20]
 
 Therefore, according to the People, the letter from general counsel is not entitled to deference.
 

 The People’s final argument against deferring to the CPSC’s advisory opinion is the opinion’s interpretation contravenes the language of the statute and regulations. We agree with this assertion and, for the reasons explained fully above, we find the CPSC’s interpretation is “ ‘plainly erroneous’ ” and entitled to no deference.
 
 (Stinson
 
 v.
 
 U.S.
 
 (1993) 508 U.S. 36 [113 S.Ct. 1913, 1919, 123 L.Ed.2d 598];
 
 Dix
 
 v.
 
 Superior Court
 
 (1991) 53 Cal.3d 442, 460 [279 Cal.Rptr. 834, 807 P.2d 1063]).
 

 For the foregoing reasons we find point of sale signs pursuant to Proposition 65 do not constitute “directions for use” and are not preempted by the FHSA. We now turn to Cotter’s claim of de facto labeling.
 

 II.
 
 Proposition 65 Is Not a De Facto Labeling Statute
 

 Even if point of sale signs are not labels, Cotter argues Proposition 65 can only be implemented by placing labels on a package; therefore, in practice, it is a labeling statute and preempted by the FHSA. Since the question of de facto labeling raises an issue of law and material fact, we independently review the evidence submitted to determine whether it raises a triable issue of material fact.
 
 (Schrader
 
 v.
 
 Scott, supra,
 
 8 Cal.App.4th 1679, 1684.)
 

 To establish a de facto labeling statute, Cotter must show it can only satisfy the requirements of Proposition 65 by using labels.
 
 (Stratton, supra,
 
 92 F.3d 807, 810 [to find preemption a party must show all possible methods of complying with Proposition 65 conflict with the FHSA].) Cotter cannot
 
 *1394
 
 establish de facto labeling merely by demonstrating it is difficult or costly to comply. Rather, it must show using point of sale signs is a “physical impossibility.” (See
 
 Allenby, supra,
 
 958 F.2d 941, 948-949 [“[F]or purposes of preemption analysis,” the party arguing preemption must show “a physical impossibility of complying” with both Proposition 65 and the federal statute “before succeeding on a claim that Proposition 65 is preempted on this theory.”].)
 

 Cotter cites almost no legal authority to support its contention of de facto labeling, but claims point of sale signs cannot be used because they are ineffective and too expensive to implement. Cotter’s evidence of “physical impossibility” amounts to little more than submitting a number of conclusions, declarations, and opinions. Interestingly, Cotter fails to explain why, if point of sale signs are so costly and ineffective in communicating a message, manufacturers continue to use them to advertise their goods.
 

 Cotter first argues the warnings required by Proposition 65 “must be reasonably calculated, considering the alternative methods available under the circumstances, to make the warning message available to the individual prior to exposure.” (Cal. Code Regs., tit. 22, § 12601, subd. (a).) Point of sale signs, he argues, are less effective than product labels in warning consumers. To support this claim he cites a footnote in
 
 King
 
 v.
 
 E.I. Du Pont De Nemours & Co.
 
 (D.Me. 1992) 806 F.Supp. 1030, 1037, footnote 4, which was later affirmed in an opinion minus the footnote in
 
 King
 
 v.
 
 E.I. DuPont De Nemours and Co.
 
 (1st Cir. 1993) 996 F.2d 1346. The footnote merely stated “[w]e can see no more effective way to warn potential users of the dangers of a product than by product labels.”
 
 (King
 
 v.
 
 E.I. Du Pont De Nemours & Co., supra,
 
 806 F. Supp. at p. 1037, fn. 4.) This statement does not establish the ineffectiveness of point of sale signs.
 

 In addition to failing to demonstrate ineffectiveness, Cotter’s argument is seriously flawed because a manufacturer does not have to use the best warning method to comply with Proposition 65. The court in
 
 Ingredient Communication Council, Inc.
 
 v.
 
 Lungren
 
 (1992) 2 Cal.App.4th 1480, 1494 [4 Cal.Rptr.2d 216]
 
 (ICQ
 
 confirmed Proposition 65 does not require a manufacturer to use the “ ‘best’ ” or most effective method, but merely demands a “reasonable” method. Both the court in
 
 ICC, supra,
 
 2 Cal.App.4th 1480, 1486 and the safe harbor language set forth in the California Code of Regulations (tit. 22, § 12601, subd. (b)(1)(B)) approve of point of sale signs as a reasonable method.
 
 [21]
 

 
 *1395
 
 Cotter also claims a manufacturer cannot ensure a retailer will properly post the signs without incurring unacceptable costs to implement the program.
 
 [22]
 
 In support of this argument, Cotter stated it sent signs to its California members on March 1988 and January 1990. Moreover, in January 1994, it sent signs again
 
 [23]
 
 and directed the members to place both signs “close to each of your own paint factory’s products.” Cotter also submitted deposition testimony of several retailers explaining the problems they had complying with the manufacturer’s requests for them to post point of sale warnings.
 

 To counter Cotter’s argument, AYS identified numerous paint and/or adhesive manufacturers complying with Proposition 65 warning signs. Many True Value Hardware stores did not follow instructions, the People contend, because Cotter did not adequately explain the proper placement of the signs.
 
 [24]
 
 The People claim once the retailers received explicit instruction about the appropriate location pursuant to the permanent injunction, the majority of those deposed testified they understood the directions and properly complied.
 
 [25]
 

 In their final argument, the People maintain Cotter cannot argue de facto labeling because it did not attempt to follow the mandate in
 
 ICC.
 
 The court in
 
 ICC
 
 stated a manufacturer must adjust the warning system in light of operational experience and new facts when attempting to comply with Proposition 65.
 
 (ICC, supra,
 
 2 Cal.App.4th 1480, 1493.) AYS notified Cotter on December 10, 1992, that its stores were not providing warnings for their products containing toluene and Cotter should have taken appropriate steps to remedy the problem. Cotter, the People claim, can exercise a certain level
 
 *1396
 
 of control over the True Value Hardware stores because members of the cooperative must agree to observe Cotter’s bylaws, policies, and procedures.
 
 [26]
 

 We find the trial court did not err in finding “Proposition 65 does not impose a de facto labeling requirement on Cotter & Company.” Cotter has not established the physical impossibility of meeting Proposition 65 warning requirements with point of sale signs. Cotter may ultimately choose to use a label which complies with both Proposition 65 and the FHSA; however, choosing to use a label does not negate the viability of point of sale signs.
 

 Conclusion
 

 The warning requirements of Proposition 65 may be satisfied by point of sale signs which are not “directions for use” or labels under the FHSA. The FHSA, therefore, does not preempt Proposition 65. Additionally, Cotter has failed to prove it cannot use point of sale signs and has not established it cannot use point of sale signs to satisfy Proposition 65 warning requirements. Accordingly, we affirm.
 

 Kline, P. J., and Haerle, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied July 9, 1997.
 

 [1]
 

 Health and Safety Code section 25249.5 et seq„ which became effective January 1, 1987, codifies Proposition 65.
 

 [2]
 

 Unless otherwise designated, all code sections refer to the Health and Safety Code.
 

 [3]
 

 Toluene became listed as a reproductive toxin on January 1,1991 (Cal. Code Regs., tit. 22, § 12000), and warnings became required pursuant to section 25249.10, subdivision (b), as of January 1, 1992.
 

 [4]
 

 Proposition 65 provides for citizen enforcement of the statute. Section 25249.7, subdivision (d), states: “Actions pursuant to this section may be brought by any person in the public interest if (1) the action is commenced more than sixty days after the person has given notice of the violation which is the subject of the action to the Attorney General and the district attorney and any city attorney in whose jurisdiction the violation is alleged to occur and to the alleged violator, and (2) neither the Attorney General nor any district attorney nor any city attorney or prosecutor has commenced and is diligently prosecuting an action against such violation.”
 

 [5]
 

 The three other companies settled with the People and agreed to the entry of consent judgments which ordered them to comply with Proposition 65 and pay penalties and restitution.
 

 [6]
 

 Justice Stevens delivered the opinion of the court. Justices Kennedy, Souter, Ginsburg, and Breyer joined with respect to_U.S. at pages [116 S.Ct. at pages 2245-2251] (pts. I, II, and III); _ U.S. at pages [116 S.Ct. at pages 2253-2258] (pt. V); and _ U.S. at page_[116 S.Ct. at page 2259] (pt. VII). Justices Kennedy, Souter, and Ginsburg joined with respect to_U.S. at pages [116 S.Ct. at pages 2251-2253] (pt. IV) and_U.S. at pages _-_ [116 S.Ct. at pages 2258-2259] (pt. VI). Justice Breyer filed an opinion concurring in part and concurring in the judgment. Justice O’Connor filed an opinion concurring in part and dissenting in part, in which Justices Rehnquist, Scalia, and Thomas joined. All references, unless otherwise specified, refer to Justice Stevens’s opinion.
 

 [7]
 

 The Smoking Act required the following warning: “ ‘Warning: The Surgeon General Has Determined That Cigarette Smoking Is Dangerous to Your Health.’ ”
 
 (Cipollone, supra,
 
 505 U.S. at p. 508 [112 S.Ct. at p. 2613].)
 

 [8]
 

 Allenby
 
 also found Proposition 65 was not preempted by the Federal Insecticide, Fungicide, and Rodenticide Act.
 

 [9]
 

 Allenby
 
 also found no preemption because the warnings required under Proposition 65 were not “necessarily nonidentical” to the requirements under the FHSA. (958 F.2d at p. 950.) Since neither statute required specific language, a manufacturer could
 
 choose
 
 to use a label which satisfied both Proposition 65 and the FHSA. However, after
 
 Cipollone,
 
 once Congress has enacted a preemption amendment, the issue is not whether the warnings can never be the same, but whether the warnings are identical. The requirements under Proposition 65 are clearly not identical to the warnings under the FHSA. Thus, we disagree with the holding in
 
 Allenby
 
 to the extent it found no preemption on this basis.
 

 [10]
 

 Proposition 65 imposed consumer warning requirements for dental amalgam because it contained dental mercury.
 

 [11]
 

 The two component parts of dental amalgam—dental mercury and amalgam alloy—are separately regulated by the MDA; therefore, the court concluded the MDA covered dental amalgam.
 
 (Stratton, supra,
 
 92 F.3d 807, 810.)
 

 [12]
 

 We express no opinion about Allenby's finding that FIFRA did not preempt Proposition 65 warnings.
 

 [13]
 

 The People also argue the FHSA does not preempt Proposition 65 because the state and federal statute warn against different risks. The People contend Proposition 65 addresses harm to the developing fetus (Cal. Code Regs., tit. 22, § 12601, subd. (b)), while the FHSA relates to the risks of chemical pneumonitis, pneumonia, and pulmonary edema caused by aspiration into the lungs and systemic injury from inhaling the vapor. This argument has no merit
 
 *1389
 
 because, as Cotter asserts, the FHSA includes reproductive toxicity within the meaning of “toxic” (16 C.F.R. § 1500.3(c)(2)(ii)(C) (1996)).
 

 [14]
 

 Cotter points out
 
 Burke
 
 v.
 
 Dow Chemical Co.
 
 (E.D.N.Y. 1992) 797 F.Supp. 1128, 1140]
 
 (Burke)
 
 represents the sole post
 
 -Cipollone
 
 case holding FIFRA does not preempt warnings outside of product labeling. The People contend
 
 Burke
 
 correctly applied the “channels of communication” language contained in
 
 Cipollone.
 
 The court in
 
 Cipollone
 
 stated that even if one channel of communication was preempted, other “channels of communication” were not.
 
 (Cipollone, supra,
 
 505 U.S. 504, 528 [112 S.Ct. 2608, 2623].) The court, however, was referring to obligations outside of advertising or the promotion of cigarettes and the statement does not clarify whether labeling includes point of sale signs. Since we find the preemption question under FIFRA and the FHSA to be different, we do not address
 
 Burke’s
 
 interpretation of the court’s use of “channels of communication.”
 

 [15]
 

 FIFRA’s preemption clause provides as follows: “Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.” (7 U.S.C. § 136v(b).)
 

 [16]
 

 To the extent
 
 Allenby, supra,
 
 958 F.2d 941, 945, held the issue of preemption arising under FIFRA is identical to that under the FHSA, we disagree. We do agree with Allenby’s conclusion that the preemption provisions in both statutes are essentially identical.
 

 [17]
 

 “Because the FHSA requires no federal agency approval of the precise language which appears on the label of a substance covered by the FHSA, it appears that an inadequate warning claim is more readily preempted for a product covered by FIFRA than would a similar inadequate warning claim be for a product covered by the FHSA. Of course, since this case does not involve FIFRA, we do not resolve this question. We discuss FIFRA merely to explain why cases interpreting that statute may be of limited relevance to the issue in this case.”
 
 (Jenkins
 
 v.
 
 James B. Day & Co., supra,
 
 634 N.E.2d 998, 1004, fn. 4.)
 

 [18]
 

 Dicta in
 
 Taylor AG
 
 suggested the court agreed point of sale signs, even under the broad definition of label in FIFRA, did not constitute labeling. The court stated
 
 Allenby
 
 did not address “whether common law damages could be imposed for the absence of these
 
 non-label
 
 [point of sale signs] warnings.”
 
 (Taylor AG, supra,
 
 54 F.3d 555, 561, fn. 2, italics added.) Thus, it identified point of sale signs as “non-label[s].”
 

 [19]
 

 Cotter requests this court to take judicial notice of a letter from CPSC General Counsel Eric A. Rubel dated October 17, 1995, stating Advisory Opinion No. 312 has never been modified, revoked, suspended, or superseded. We grant judicial notice of this letter.
 

 [20]
 

 We grant the People’s request for judicial notice of letters and other documents from the file of the general counsel of the CPSC. One such letter states “[t]he Commission has not formulated a general view of preemption [of Proposition 65] beyond the express preemption provisions in its various statutes.” (Letter dated July 3, 1995, from the general counsel for the CPSC to counsel for Cotter.)
 

 [21]
 

 Cotter argues any method other than labeling would not meet the “reasonableness” test of
 
 ICC, supra,
 
 2 Cal.App.4th at page 1494. The “reasonableness” test requires the trial court to
 
 *1395
 
 examine the warning’s efficacy and cost before determining whether the warning satisfies Proposition 65. The “reasonableness” test set forth in
 
 ICC,
 
 however, does not apply to point of sale signs. The court in
 
 ICC
 
 limited the “test” to situations in which the trial court had to determine whether “alternative warning methods”—that is, methods outside of the safe harbor warnings—provided a reasonable warning. (2 Cal.App.4th at p. 1494.)
 

 [22]
 

 Attorneys for the National Paint and Coatings Association filed an amicus curiae brief on behalf of Cotter’s de facto labeling argument. Much of the data on the costs associated with point of sale signs is irrelevant to Cotter’s inability to use these signs and is outside the record.
 

 [23]
 

 AYS, an intervener in this action, claims many of these signs did not comply with Proposition 65.
 

 [24]
 

 The People contend the directions did not tell retailers to post the signs in front of or next to the spray paints. For example, directions sent January 27, 1992, merely stated: “Signs # 1 and # 2 enclosed should be displayed close to each of your own Paint factory’s products.”
 

 [25]
 

 Cotter insists some retailers did not comply even after being given proper information, establishing manufacturers cannot compel retailers to follow their orders. Cotter, however, misconstrues its burden of proof. It must show it
 
 cannot
 
 comply and, since most retailers did adhere to Cotter’s instructions when given the proper information, compliance seems physically possible. As the People point out, Cotter can use a variety of techniques and incentives to encourage acquiescence among the remainder of the retailers.
 

 [26]
 

 The People claim Cotter could take additional steps to ensure acquiescence. After an action involving Cotter and improper Proposition 65 warnings for methylene chloride paint strippers, the manufacturer remedied the situation by (1) providing clear directions to the stores for the placement of the signs and (2) requiring each store to return a postcard indicating it had properly posted the warning sign. Cotter followed up with phone calls to those stores not returning the postcard.